2004 VT 51

# Robert Allen and Anne Allen, Merle J. Bushkin, John and Adelaide Zabriskie, Robert and Megan Houser and Sean Healey v. Town of West Windsor

[852 A.2d 627]

Nos. 03-041, 03-070, 03-071, 03-083 and 03-084

Present: Amestoy, C.J., Johnson, Skoglund and Reiber, JJ., and Gibson, J. (Ret.), Specially Assigned

Opinion Filed May 28, 2004

*Jonathan L. Springer* of *Law Office of Jonathan L. Springer, P.C.*, Windsor, for Plaintiffs-Appellees Allen.

*Thomas Hayes* of *Eaton & Hayes, P.C.*, Woodstock, for Plaintiffs-Appellees Bushkin, Healey, Housèr and Zabriskie.

*Paul S. Gillies* of *Tarrant, Marks & Gillies,* Montpelier, for Defendant-Appellant.

¶ 1. **Amestoy, C.J.** The Town of West Windsor brings this consolidated appeal from the state appraiser in five property tax cases challenging the town's 2001 assessment. The town argues that it properly assessed taxpayers' properties at their fair market value, and that taxpayers have not overcome the presumption of validity its valuation enjoys under our precedents. We affirm.

¶ 2. We begin with the general principles governing property tax assessments. Vermont law requires that property appraisals for tax assessment purposes reflect a property's fair market value. 32 V.S.A. § 3481(1); *Alexander v. Town of Barton*, 152 Vt. 148, 155, 565 A.2d 1294, 1298 (1989). Under § 3481(2), the listed value used for assessing taxes should be equal to the property's fair market value. See 32 V.S.A. § 348`1(2) (listed value is 100% of appraisal value). We have long acknowledged, however, that listing all property at fair market value is not practically feasible every year, particularly in a rising real estate market. *Alexander*, 152 Vt. at 155, 565 A.2d at 1298; *Bowen v. Town of Burke*, 153 Vt. 131, 133, 569 A.2d 452, 453 (1989) (Dooley, J., concurring). Thus, a difference often exists between listed and fair market values of real property, and that difference is permissible so long as the ratio between listed and fair market values is consistent among properties. See *Int'l Paper Co. v. Town of Winhall*, 133 Vt. 385, 387-88, 340 A.2d 42, 44-45 (1975) (tax equity and uniformity is achieved if all property in town is listed at uniform percentage of fair market value); see also *Alexander*, 152 Vt. at 156, 565 A.2d at 1299 (taxing statutes contemplate equalizing values of properties in the same class and not across classes). The need for uniformity derives from the constitutional command that no taxpayer pays a disproportionate share of the public tax burden. See *Town of Barnet v. Palazzi Corp.*, 135 Vt. 298, 301, 376 A.2d 24, 27 (1977) (Vermont Constitution, United States Constitution, and state statutes governing taxation of real and personal property require that taxes be uniformly assessed). Accordingly, in property tax appeals arising under § 4467 of Title 32, the Legislature has directed the state appraiser to list the property

subject to appeal at a value that corresponds to the listed values of comparable properties in the town.

¶ 3. In the five appeals consolidated here, the state appraiser reduced the listed value of each property to ensure tax equity. In the case of Robert and Anne Allen, the state appraiser reduced the listed value of their 10.12-acre property from $269,000 to $236,000. The Allens purchased the property in 1999 for $270,000, and have never disputed that the price paid for the property reflected its fair market value. Like the Allens, John and Adelaide Zabriskie have not disputed that their 87.3-acre property was worth approximately $1.25 million, the price they paid for it in 1998. In their appeal, the state appraiser determined that the property should be listed at $445,742 and not at full fair market value. Megan and Robert Houser were also successful in persuading the state appraiser that the fair market value of their property, which they bought in June 2001, should not be its listed value. The state appraiser reduced the listed value of their twenty-five-acre improved parcel from $950,200 to $354,900. The two remaining taxpayers involved in this appeal, Merle Bushkin and Sean Healey, purchased their properties in 1999 and 1998 for $715,000 and $700,000 respectively. The state appraiser determined that the proper listed value of Bushkin's property was $463,050, and he reduced the listed value of Healey's property to $370,444.

¶ 4. The town challenges the state appraiser's decision to reduce the listed value of taxpayers' properties to achieve tax uniformity. The town claims that it properly listed taxpayers' properties at 100% of fair market value just as it did for all other properties in West Windsor. We review the town's claim under a well-established standard. This Court scrutinizes the state appraiser's decision to ensure that it is supported by findings that are rationally drawn from the evidence. *Vt. Elec. Power Co. v. Town of Vernon*, 174 Vt. 471, 472, 807 A.2d 430, 433 (2002) (mem.). The town's valuation enjoys presumptive validity before the state appraiser, but that presumption is rebuttable. *Id.* Taxpayers may overcome the presumption by producing any admissible evidence, "such as the lack of uniformity, or a showing of excessiveness," *Palazzi Corp.*, 135 Vt. at 303, 376 A.2d at 28, that tends to prove the taxpayer's claim. *Vt. Elec. Power Co.*, 174 Vt. at 472, 807 A.2d at 433-34; see also *Philbin v. Town of St. George*, 156 Vt. 640, 641, 588 A.2d 1060, 1061 (1991) (mem.) (taxpayer, taxing authority, and reviewing court may rely on any relevant evidence when determining whether a particular assessment lacks uniformity).

¶ 5. In each of the five cases on appeal, the state appraiser had ample evidence before him to conclude that the town did not, in fact, list other properties in West Windsor at 100% of their fair market value as the town claims. The record before the state appraiser established that West Windsor's listers manipulated certain inputs in the computer program they used to perform the town-wide appraisal in 2001. Because the program used the cost-based appraisal method, the listers could increase the appraised value of a property by increasing the quality-level input the software required. The listers did so for taxpayers' properties and were able to arrive at an appraised value in each case that approximated the price taxpayers paid for their properties. An expert appraiser who testified in four of the five appeals here told the state appraiser that increasing the quality level input would have been proper if the property had experienced a physical change using high-quality components. The town did not present any evidence demonstrating, however, that any such changes were made to any of the subject properties. The expert explained that he reviewed a total of eighty other West Windsor properties and their listings and determined that the listers did not apply the upward adjustment to the quality level input uniformly. It appeared that the listers did so for recently sold residential properties only. The expert also testified that West Windsor's listers did not apply a depreciation adjustment to the improvements on the subject properties but did so for improvements on other residential properties. The increase in quality level combined with the lack of a depreciation adjustment caused the computer program to use higher per-square-foot values for taxpayers' properties than the values used in the computation for comparable residential properties the expert examined. It is apparent from the evidence before the state appraiser that the town used inputs for taxpayers' properties that increased the value resulting from the software computation, and that value was equivalent to the sales price taxpayers paid when they bought their properties. In contrast, properties that had not been the subject of recent sales were not treated in a similar manner.

¶ 6. The state appraiser exhaustively described the valuation discrepancies flowing from the manner in which the listers used the software program. In the case of Robert and Megan Housers' property, the state appraiser found that finished floor space of the subject property was valued at $170 per square foot while comparable residential properties had per-square-foot values ranging from $56 to $88. Had the listers not changed the quality level input in the Housers'

case, the final appraised value for their property would have been comparable to other residential properties in West Windsor that had not been the subject of a recent sale or a quality level adjustment.

¶ 7. The glaring disparity seen in the Housers' case is consistent with the disparities the state appraiser found in the other cases before us. In the Zabriskie appeal, the state appraiser noted, among other things, that the town valued their 75.70-acre woodland at $403,200 while other comparable properties had wooded land ranging in value from $17,300 for 41.66 acres to $85,000 for 126.40 acres. The town provided no reasonable explanation for such a significant difference in value for the same type of property. Like the Housers, the town's per-square-foot value of finished floor space for Merle Bushkin's property was $106 while similar properties had corresponding values of $56 to $71. Again, the only explanation for the difference was the quality-level input used in the software program the town utilized. Indeed, the state appraiser found that the town's appraisal method "departed from standard criteria employed in the assessment of [r]eal property when it placed assessment value on" the Healey, Bushkin, Houser, and Zabriskie properties.

¶ 8. In the Allens' case, the state appraiser also rejected the town's presumptively correct valuation because the town's evidence was wholly unpersuasive. The Allens did not use the same expert or analysis that the other four property owners used in the appeal before the state appraiser. The Allens analyzed the values placed on other property located in the same development as their property. After reviewing the evidence, and the property in question, the state appraiser determined that the five comparable properties the Allens presented, with listed values ranging from $140,100 to $251,100, were reliable evidence of the subject property's proper listed value because (1) they were all located in the same development with the same restrictive deed covenants that the Allens' deed contained; (2) they were similar in size and location to the Allens' property; and (3) the dwellings on them were in comparable condition to the Allens' dwelling. The state appraiser noted that the site improvement value for the Allens' property was consistent with the site improvement values West Windsor applied to the five comparables the Allens introduced. The appraiser explicitly rejected the properties the town offered to support its decision, finding that they were not probative or reliable as evidence of proper listed value. The appraiser concluded that the town had no basis to assert that it treated the Allens' property the same as every other property by listing it at 100% of fair market value; his

analysis demonstrated that the town listed the Allens' property at 100% of its true value but did not do so for other properties sharing similar characteristics.

¶ 9. The town insists, nevertheless, that the state appraiser should have accepted its valuation in each case because taxpayers did not present evidence to establish the fair market value of the comparable properties they used in their analyses. The town claims that the appraiser should have computed an equalization ratio by comparing the market to listed values of all properties in the town. See *Alexander*, 152 Vt. at 155-56, 565 A.2d at 1298 (equalization ratio is calculated by sum of listed values of comparables divided by sum of comparables' fair market values). Although the method the town points to is the most common equalization method, the law does not require the use of a single method of equalization. See *Philbin*, 156 Vt. at 641, 588 A.2d at 1061 (Court will not dictate how equalization should be done, and lack of uniformity in assessments may be established by any relevant evidence); see also *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County*, 488 U.S. 336, 345 (1989) (taxpayer demonstrated inequity in property tax through proof of systematic and intentional undervaluation of taxable property in same class as taxpayer's); *McKnight Shopping Ctr. v. Bd. of Prop. Assessment*, 209 A.2d 389, 393 (Pa. 1965) (no exclusive method of equalization exists and any relevant evidence may be relied upon to demonstrate that uniformity is lacking in town's assessments). The overriding goal is to ensure that, whatever the fair market value of a property might be, its listed value corresponds with the listed value of comparable properties so that no taxpayer pays more than his or her fair share of the property tax burden.

¶ 10. In a similar vein, the town also alleges that the state appraiser erred by looking at listed values only in his analysis. This argument has little merit. The premise of the town's claim before the state appraiser was that the town listed all residential properties at fair market value. Assuming that were true, logic dictates that properties comparable in size, quality, and location, factors relevant to establishing fair market value, would have roughly equivalent fair market values and, in turn, roughly equivalent listed values. What the state appraiser found was an enormous disparity in listed values of comparable properties used for equalization purposes. See *Bowen*, 153 Vt. at 135, 569 A.2d at 454 (comparable properties for equalization purposes not limited to properties that may establish fair market value of subject property); *McKnight Shopping Ctr.*, 209 A.2d at 392 (finding

error in court's rejection of equalization evidence on grounds that the "comparable" properties were not similar enough to taxpayer's property; any relevant evidence may be used to establish lack of uniformity in assessments). Here, the state appraiser was presented with testimony from an expert who examined a total of eighty properties in West Windsor. The disparity between the listed values of those properties as compared to taxpayers' properties led the state appraiser to conclude that there "are a large number of properties in the Town comparable to the subject property that are assessed substantially below fair market value." Those differences support the state appraiser's conclusion that, in fact, the town did not treat all residential properties the same when it assigned values for listing purposes. The state appraiser's decisions are supported by the evidence, and the town has not shown any error in the reductions to listed value he ordered in each case. Accordingly, the state appraiser's decision in the five cases on appeal must be affirmed.

*Affirmed.*