2008 VT 44

# Robert and Candice Shaffer v. Town of Waitsfield

[956 A.2d 520]

No. 06-431

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed April 11, 2008

*Robert Shaffer* and *Candice Shaffer*, Pro Se, Waitsfield, Plaintiffs-Appellants/Cross-Appellees.

*Robert E. Fletcher* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Defendant-Appellee/Cross-Appellant.

¶ 1. **Skoglund, J.** Taxpayers Robert and Candice Shaffer appeal pro se from the state appraiser's decision to list their property at $560,800 as of April 1, 2005. They raise numerous arguments, all essentially challenging the appraiser's approach to determining listed value. The Town of Waitsfield cross-appeals, arguing that the appraiser erred in calculating an equalization ratio (ER). We agree

that the appraiser erred in calculating an ER, and we therefore reverse and remand.

¶ 2. The record indicates the following. In September 2002, taxpayers purchased a home and seventy-five acres of real property in Waitsfield for $735,000. They made major improvements to the property in 2003 and 2004, including adding a horse barn with an apartment overhead and a two-car garage with bedrooms and baths on the second floor. These improvements triggered several maintenance appraisals and, in 2005, the property was listed at $517,100.[1] Taxpayers appealed this assessment to the town board of civil authority, which reduced the listed value to $513,900. Taxpayers then appealed to the state appraiser.

¶ 3. At the hearing before the state appraiser, the parties agreed that the fair market value (FMV) of the property was $1,000,000. Taxpayers argued, however, that the appraiser should not rely on FMV to determine the appropriate listed value. Rather, they asserted that the appraiser should determine the listed value based on 1996 data (the date of the last town-wide appraisal) and the contributory value of the changes made to the property. The appraiser rejected taxpayers' approach, concluding instead that because there was sufficient and reliable evidence of a proper ER, the best approach was to equalize the agreed-upon FMV.

¶ 4. At the hearing, taxpayers advocated an ER of 47.37% based on their study of thirty-one residential sales occurring in the town in 2004 and 2005. The Town advocated an ER of 70.16%, which was the town's common level of appraisal (CLA) as reflected in the 2004 state equalization study conducted by the Division of Property Valuation and Review (PVR) of the Vermont Department of Taxes (2004 PVR study).[2] The 2005 PVR study was also in evidence, and it reflected a town-wide CLA of 60.49% based on 156 sales.

¶ 5. The appraiser rejected taxpayers' proposed ER. He explained that of the thirty-one sales identified by taxpayers, thirteen duplicated sales found in the 2005 PVR study, while six

---

[1] It appears from the record that the property was listed at $286,815 in 1999 and at $441,200 in 2004.

[2] This report was published in December 2004, and it included a study of all sales in the town between April 1, 2001 and March 31, 2004. We refer to this study as the "2004 study" because it was published in December 2004, although practically speaking, it could not be used for any property tax appeals heard during 2004.

sales had been excluded from the PVR study, indicating that they were invalid sale transactions that should not be used to calculate an ER. This left twelve sales, all of which ostensibly occurred after March 31, 2005, and were thus not included in the 2005 PVR study. The appraiser found that these twelve remaining sales did not, by themselves, provide a representative statistical sampling sufficient to determine a proper ER, particularly when compared to the 156 sales found in the 2005 PVR study and given that there were 1,067 properties in the town.

¶ 6. The appraiser also rejected the Town's proposed ER, finding the 2005 CLA more reliable than the 2004 CLA because it included sales closer in time to the appraisal date. The appraiser reasoned, however, that the 2005 CLA would be "enhanced" by adding the twelve 2005 sales from taxpayers' study. He therefore compared the listed value to sales price for these twelve sales and calculated an ER of 47.62%. He then apparently added this number to the 2005 CLA of 60.49% and divided by two to arrive at an ER of 54.06%. Applying this ER to the agreed-upon FMV of $1,000,000, the appraiser set the listed value of taxpayers' property at $540,600.

¶ 7. Taxpayers moved for reconsideration, and while the appraiser rejected the arguments raised by taxpayers, he did revise his decision in part. After reviewing the evidence again, he concluded that eight of the 2004 sales identified by taxpayers were invalid because they had not been included in the 2005 PVR study. The appraiser also concluded that, although there was no testimony or evidence of record to show that any of the 2005 sales identified by taxpayers were valid, he would consider ten of these sales valid because their ratios of listed value to sales price were comparable to ratios found in the 2005 PVR study. The appraiser excluded the remaining two sales because they had very low ratios of listed value to sales price.

¶ 8. The appraiser again reasoned that taking the sales from 2005 identified by taxpayers (now ten sales) in conjunction with the 2005 PVR study provided the greatest sampling and best evidence of the proper ER. He thus appears to have added the new ER derived from the ten sales (51.67%) to the 2005 CLA (60.49%), and divided by two, resulting in an ER of 56.08%. Applying this value to the FMV, he set the listed value of the property at $560,800. This appeal and cross-appeal followed.

¶ 9. We begin with taxpayers' arguments. Taxpayers first assert that the Town should not have been allowed to advocate for a higher listed value than that initially set by the town listers. They argue that the listers' assessment is presumed valid, and thus any proposed increase in listed value must be adequately explained. Taxpayers also argue that the listed value of their property should have been determined by considering only the contributory value of their improvements, not by reassessing the value of their property as a whole. They complain that the appraiser erred by excluding an opinion letter from a PVR employee that they offered in support of this approach.

¶ 10. We reject these arguments. The proceeding before the appraiser was a de novo hearing, 32 V.S.A. § 4467, which we have consistently held requires the appraiser to "try the dispute anew, as though it had never been heard before." *In re Milot*, 151 Vt. 615, 617, 563 A.2d 1005, 1007 (1989). This means that the Town was not limited to proffering — and the appraiser was not limited to considering — only such evidence as was presented below, *id.*, and that the appeal presented taxpayers with "the risk of increase as well as the chance of decrease." *Vill. of Morrisville Water & Light Dep't v. Town of Hyde Park*, 134 Vt. 325, 331, 360 A.2d 882, 885 (1976).

¶ 11. Taxpayers correctly assert that the assessment conducted by the town listers enjoys a "presumption of validity and legality" in the proceeding before the state appraiser. *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 507, 367 A.2d 1363, 1369 (1976). Thus, where the town introduces the appraisal into evidence, taxpayers bear the burden of presenting evidence to overcome the presumption of validity. *Id.* In this case, however, it does not appear that the Town relied upon the appraisal conducted by the listers, although even if it had, surely taxpayers would argue that their evidence was sufficient to rebut the presumption. See *id.* (discussing operation of "bursting bubble" presumption of validity, and explaining that presumption disappears upon introduction of credible evidence that fairly and reasonably tends to show that property was assessed at more than FMV or that listed value exceeded the percentage of listed value actually applied to the general mass of property in the community).

¶ 12. Instead, the parties here agreed that the FMV of taxpayers' property was $1,000,000, and thus the only question

before the appraiser was calculation of an appropriate ER. The Town presented credible evidence to support its proposed ER, and it was not required to provide taxpayers with an "adequate explanation" as to why the resulting listed value differed from the listed value found below. In any event, regardless of the position taken by the Town, the appraiser was not bound by the findings below, and it was ultimately for the appraiser to weigh the evidence and "determine the correct valuation of the property." 32 V.S.A. § 4467; *Monti v. Town of Northfield*, 135 Vt. 97, 101, 369 A.2d 1373, 1377 (1977) (factfinder's role is to determine the weight, credibility, and persuasive effect of the evidence). Taxpayers' first claim of error is without merit.

■ ¶ 13. We similarly reject taxpayers' assertion that the appraiser erred in his approach to determining listed value. By statute, the appraiser must list property at a value that corresponds to the listed value of comparable properties in the town. 32 V.S.A. § 4467. As we have repeatedly stated, this is essentially a two-step process:

> First, the fair market value of the property must be determined. Next, the fair market value must be "equalized" to insure that the property is listed comparably to corresponding properties in town. When comparable properties exist, their current market value must be compared with their current listed value to arrive at an equalization rate. This rate must then be applied to the subject property's fair market value to produce the proper listed value.

*Kachadorian v. Town of Woodstock*, 144 Vt. 348, 350-51, 477 A.2d 965, 967 (1984) (citations omitted).

■ ¶ 14. The appraiser followed this exact process here. After the parties agreed to the FMV, the appraiser considered evidence to determine an appropriate ER. The opinion letter offered by taxpayers in support of the value-added methodology was irrelevant to this analysis, and even assuming that the document was excluded in error, taxpayers fail to show that they suffered any harm from its exclusion. See *Monti*, 135 Vt. at 99, 369 A.2d at 1375 (party must demonstrate that alleged error was prejudicial and injured his or her rights). The approach taken by the appraiser was consistent with 32 V.S.A. § 4467 and with our case

law. We find no error. See *Allen v. Town of W. Windsor*, 2004 VT 51, ¶ 4, 177 Vt. 1, 852 A.2d 627 (Supreme Court reviews decisions by state appraiser to ensure that they are supported by findings rationally drawn from the evidence and are based on a correct interpretation of the law).

¶ 15. We thus turn to the ER applied by the appraiser. Taxpayers argue that the appraiser should not have applied the 2005 town-wide CLA to equalize the FMV of their property because the sales data contained in the study were outdated, and there was no justification for applying a town-wide ratio. They suggest that the appraiser should have adopted the ER that they advocated.

■ ¶ 16. As noted above, § 4467 requires that the appraiser ensure that the listed value of taxpayers' property corresponds to the listed value of "comparable properties" within the town. While the listed value of all property within a town should ideally equal its FMV, a difference between these values is allowable as long as "the ratio between listed and fair market values is consistent among properties." *Allen*, 2004 VT 51, ¶ 2. The equalization process is thus designed to ensure that, no matter what the FMV of property, "no taxpayer pays more than his or her fair share of the property tax burden." *Id.* ¶ 9.

■ ¶ 17. We have held that for purposes of calculating an ER, "comparable properties" generally include "all properties within the class of property to which the subject property belongs." *Philbin v. Town of St. George*, 156 Vt. 640, 640, 588 A.2d 1060, 1060-61 (1991) (mem.); see also *Bowen v. Town of Burke*, 153 Vt. 131, 133 n.2, 569 A.2d 452, 453 n.2 (1989) (Dooley, J., concurring) (using phrase "class of property" as synonym for "type of property — for example, residential property"). Thus, as stated above, "[w]hen comparable properties exist, their current market value must be compared with their current listed value to arrive at an equalization rate. This rate must then be applied to the subject property's fair market value to produce the proper listed value." *Kachadorian*, 144 Vt. at 351, 477 A.2d at 967.

■ ¶ 18. We have also held that where property is "unique," or where the appraiser determines that the evidence of comparables is insufficient to determine an ER, "all property within the taxing municipality" may be considered as "comparable for purposes of determining the proper corresponding listed value." *Id.* Indeed, we

have stated that because "property taxation rests on notions of equity and fairness, there is no better evidence than the average equalization ratio for all property within the [t]own" when the factfinder must look elsewhere for evidence of a proper ER. *Vt. Elec. Power Co. v. Town of Cavendish*, 158 Vt. 369, 374, 611 A.2d 389, 392 (1992).

■■ ¶ 19. In this case, the appraiser appropriately looked to town-wide sales after concluding that taxpayers' evidence of comparable sales was insufficient to calculate an ER. See, e.g., *In re Milot*, 151 Vt. at 616, 563 A.2d at 1006-07 (upholding use of town-wide ER, and explaining that "[a]lthough it is proper for the trial court in tax appeals to apply an equalization ratio derived from comparables, when it is presented with credible evidence supporting their fair market value, the absence of such evidence in the case at hand left the court unable to do so"); *Vt. Elec. Power Co.*, 158 Vt. at 373, 611 A.2d at 391 ("Where the [factfinder] concludes that it lacks a statistically representative sample of comparable property, it may use other evidence to determine the appropriate equalization ratio."); *Philbin*, 156 Vt. at 641, 588 A.2d at 1061 (although factfinder is normally limited to comparing to properties in the same class as that of taxpayer's property, "where the [factfinder] concludes that it lacks evidence of a statistically representative sample," it may use evidence of other classes). The shortcomings of taxpayers' study are detailed above, and the appraiser's findings to this effect are amply supported by the record. He acted well within his discretion in rejecting the ER proffered by taxpayers. See *Philbin*, 156 Vt. at 640, 588 A.2d at 1060-61 (the use of other evidence where the factfinder concludes that it lacks evidence of a statistically representative sample under § 4467 is a matter within the factfinder's sound discretion).

¶ 20. Given that the use of the town-wide data was appropriate, we next consider if the appraiser erred in calculating an ER. The Town argues that the 2004 CLA, standing alone, was the most appropriate and equitable ER. It maintains that not only did the appraiser err by relying on the 2005 CLA, but he then compounded this error by crudely averaging the 2005 CLA with an ER derived from a few selected but unvalidated sales, thereby inflating the effect of these questionable sales while diluting the ER from the 2005 CLA.

■■ ¶ 21. We agree that the appraiser's calculation of an ER was erroneous. See *Barrett v. Town of Warren*, 2005 VT 107, ¶ 5,

179 Vt. 134, 892 A.2d 152 (Supreme Court reviews decisions by state appraiser "to ensure that they are supported by findings rationally drawn from the evidence and are based on a correct interpretation of the law"). Not only did the appraiser fail to explain exactly how he arrived at his result, see, e.g., *Kachadorian*, 144 Vt. at 351, 477 A.2d at 967 ("Findings of fact must state clearly what was decided and how the decision was reached." (quotation omitted)), but his ultimate conclusion is contradicted by his own findings. As the appraiser found, and the record shows, there was no evidence that any of the 2005 sales identified by taxpayers were valid sale transactions for purposes of calculating an ER. Thus, they should not have been used by the appraiser at all. Given the lack of foundation, the fact that ten of the 2005 sales identified by taxpayers had ratios similar to those found in the PVR study (using the numbers provided by taxpayers) does not in any way demonstrate that these sales were in fact valid. The appraiser's crude averaging of these unvalidated sales with the town-wide CLA was equally arbitrary and erroneous.

¶ 22. We are not persuaded, however, that application of the unadulterated 2004 CLA, which reflects a three-year average of sales within the town, is necessarily appropriate. The appraiser looked to the 2005 CLA because he believed that sales closest in time to the appraisal date provided the best evidence of an appropriate ER. In a companion case issued today, *Dewey v. Town of Waitsfield*, 2008 VT 41, ¶ 28, 184 Vt. ___, 956 A.2d 508, the Court has decided that "where evidence is presented showing a steep rate of appreciation, the most accurate ER is determined by looking at sales closest in time to the appraisal date — whether one year prior to the appraisal date or six months before and after the appraisal date — unless the trier of fact is persuaded by the evidence that such an approach is unfair, flawed, or otherwise inappropriate." Because we are remanding this case for recalculation of an ER in light of the errors described above, we encourage the appraiser to refer to *Dewey* in reaching his decision on remand.

¶ 23. Finally, because it may arise again on remand, we address taxpayers' assertion that the appraiser was required to make specific findings that the ultimate listed value of their property, both as a whole and in its individual component parts, was proportionate to comparable properties within the town. According

to taxpayers, because they presented evidence that the listed values of their home site, pond, and bulk land were higher than the listed value of similar components found in four comparable properties, it necessarily follows that the ER applied by the appraiser was too high.

■ ¶ 24. This argument evidences a basic misunderstanding of the tax appeal process. As repeatedly stated above, taxpayers agreed to the FMV of their property, and the only question before the appraiser was the calculation of an ER. The whole point of calculating and applying an ER is to ensure proportionality among the town's taxpayers. See, e.g., *Allen*, 2004 VT 51, ¶ 9 ("The overriding goal [of the equalization process] is to ensure that, whatever the fair market value of a property might be, its listed value corresponds with the listed value of comparable properties so that no taxpayer pays more than his or her fair share of the property tax burden."). Having calculated and applied an ER, the appraiser does not need to then make additional findings that the listed value is in fact proportionate to comparable properties. There is similarly no requirement that the appraiser make findings regarding the uniformity of each individual component of a taxpayers' property. Taxpayers offer no support whatsoever for this assertion. Our decision in *Allen* does not stand for this proposition, and to the extent that taxpayers rely on this case, their reliance is misplaced.

■ ¶ 25. As we have held in other cases, taxpayers' evidence of the listed value of comparable properties was meaningless absent evidence of the FMV of these properties. See *Littlefield v. Town of Brighton*, 151 Vt. 600, 604, 563 A.2d 998, 1001 (1989) ("listed value alone, in the absence of fair market value, is useless in arriving at a ratio for equalization purposes" (quotation omitted)). As we explained in *Littlefield*, "simply adducing evidence regarding the listed value of a comparable property, without ascertaining and applying an equalization ratio to ensure equitable taxation among similar properties, does not prove correct valuation under 32 V.S.A. § 4467." *Id.*

¶ 26. Thus, although we conclude that the appraiser's general approach to determining listed value was correct, his ultimate

439

conclusions were arbitrary and erroneous. We therefore reverse the appraiser's decision, and remand for additional proceedings.

*Reversed and remanded for proceedings consistent with this opinion.*