2008 VT 91

### James GARILLI v. TOWN OF WAITSFIELD

### Nicholas and AnnMarie Harmon v. Town of Waitsfield

[958 A.2d 1188]

Nos. 07-237 & 07-238

¶ 1. June 19, 2008. The Town of Waitsfield brings this consolidated appeal from the state appraiser's decision to reduce the Town's 2006 property tax assessments on two parcels. On appeal, the Town challenges: (1) the procedures employed by the appraiser, claiming that he denied the Town due process, and (2) the appraiser's conclusions as not supported by the evidence. We affirm.

¶ 2. Taxpayers Nicholas and AnnMarie Harmon and James Garilli all own property in the Town of Waitsfield. The Harmons own a residential dwelling located at 325 Strong Road, which they purchased in 2003 for $472,000. After purchasing the property, they renovated a two-story "barn/outbuilding structure" by adding dormers and finishing the second floor as an office space. The Harmons also added a deck onto the master bedroom in the main house and converted a closet into a laundry room by adding a dormer. Taxpayer Garilli owns a 1.95-acre commercial property with frontage on Route 17, which he purchased in 2004 for $100,000. On the property is a 2,500-square-foot building used as an auto repair facility and a 600-square-foot barn.

¶ 3. The Town completed a town-wide reappraisal effective for the 2006-2007 tax year. Garilli's parcel was valued at $157,000, and the Harmons' at $639,800. All three taxpayers grieved the assessment and appealed to the Board of Civil Authority. When their appeals were denied, taxpayers filed an appeal with the Director of the Division of Property Valuation and Review.

¶ 4. The Director appointed an appraiser to hear the appeals. A hearing was held in each case. At these hearings, the Town was represented by David Martin, Deputy Assessor. During both proceedings the appraiser requested, sua sponte, that the Town produce information from their records to be introduced as evidence. Neither party had sought to include this material in the record. In the Harmon appeal, the Town produced the records; in the Garilli appeal, it did so

after the appraiser issued a subpoena. The Town did not object to the introduction of this evidence, and did not seek to quash the subpoena in the Garilli appeal.

¶ 5. The appraiser issued decisions on both appeals in May 2007. Based on an analysis of several comparable properties introduced by the Town in the Harmon case, the appraiser found the fair-market value (FMV) of the Harmon property to be $503,700. In the Garilli appeal, the appraiser used a cost method due to the lack of comparable commercial properties, and determined the FMV of the Garilli property to be $121,100.

¶ 6. The Town timely appealed both decisions. The Town claims that the appraiser denied the Town due process when: (1) on his own initiative, he requested additional documentation from the Town, and (2) he allowed one of Garilli's witnesses to cross-examine Mr. Martin after Garilli's lawyer had completed his examination. The Town also argues that the appraiser's conclusions in the Harmon case were not supported by the evidence.

¶ 7. We first address the Town's claim that it was denied due process. In both cases the Town failed to object to these alleged due process violations during the hearings. "[T]o properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the [appraiser] a fair opportunity to rule on it." *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (citation omitted). We will not address arguments not properly preserved for appeal. *Id.* The rule is no different for constitutional claims. See *Cleveland v Dep't of Employment Sec.*, 138 Vt. 208, 211, 414 A.2d 1157, 1159 (1980) (when due process claim not raised below, we will not address it on appeal).

¶ 8. We note that, in the Garilli appeal, the Town first refused to produce the requested documents, thus indicating that it disputed the appraiser's request.

This initial hesitance is insufficient to preserve the claim for review, however, as the Town eventually did produce the requested documentation without objecting on the record, or moving to quash the subpoena. See V.R.C.P. 45 (establishing a procedure for challenging a subpoena). It thus failed to preserve its claim for appeal.

¶ 9. The Town next claims that the appraiser's valuation of the Harmon property at $503,700 was not supported by the evidence. We accord deference to the decisions of the state appraiser. "Where the record contains some basis in evidence for [the appraiser's] valuation, the appellant bears the burden of demonstrating that the exercise of discretion was clearly erroneous." *State Housing Auth. v. Town of Northfield*, 2007 VT 63, ¶ 5, 182 Vt. 90, 933 A.2d 700 (citation omitted); see also *Vt. Elec. Power Co. v Town of Vernon*, 174 Vt. 471, 472, 807 A.2d 430, 433 (2002) (mem.) ("We will defer to the state appraiser when the determination is rationally derived from his findings, even where contradictory evidence exists.").

¶ 10. In the Harmon appeal, the Town introduced a spreadsheet displaying the FMV and property details for four Waitsfield properties — referred to as T-1 through T-4 — that it deemed comparable to the subject property, arguing that the appraiser should calculate the FMV of the subject property by contrasting these properties with the subject property. While accepting the Town's general methodology, the appraiser rejected some of the Town's analysis of these "comparables." Property T-1 he dismissed as being insufficiently similar to the Harmons' property, due to the fact that its sale price — $830,000 — was "well above the expected estimate of FMV of the Subject property." Properties T-2, T-3, and T-4, which had sold for $510,000, $530,000, and $515,000, respectively, were sufficiently comparable to provide a "reliable esti-

mate of FMV for the Subject property." Although their sale prices were in the low-$500,000s, however, the Town had recalculated the value of these properties by adding upward "adjustments" to reflect favorable features. Property T-2 had a $155,000 upward adjustment due to "house/lot mismatch" — a condition where a large, high-value home is located on a small lot — thus resulting in an adjusted value of $657,030. The values of properties T-3 and T-4 were adjusted upward by $150,000 and $175,000, respectively, because the lots contained "classic old farmhouses" perceived by the Town to be of higher value. The adjusted value of T-3 was $631,010, and T-4 $640,265.

¶ 11. The appraiser rejected these upward adjustments. The "house/lot mismatch" adjustment was dismissed, because the appraiser saw "nothing out of the ordinary" with respect to T-2 and found "no supporting evidence to justify this $155,000 adjustment." He similarly rejected the "classic old farmhouse" adjustments on properties T-3 and T-4 due to the lack of supporting evidence.

¶ 12. After subtracting these upward adjustments, the appraiser compared properties T-2, T-3, and T-4 to the subject property in order to assess the value of the property. He did not adjust the value of the properties for time, explaining that sales data showed that a time-value adjustment did not correlate with the actual value of the homes. He further rejected the characterization of the subject property as a "classic old farmhouse" — which might warrant an upward adjustment — due to the fact that only one-third of the Harmons' home was "original farmhouse," while the remainder was constructed of "modern construction materials" with a "contemporary interior design." By comparing the sale prices and details — including the size of the "comparables," their amenities, and locations — with the features of the subject property, the appraiser concluded that

the FMV of the Harmons' home was $503,700.

¶ 13. We cannot conclude that the appraiser's conclusion was clearly erroneous. His determination of FMV was based on a comparison of three of the "comparables" proffered by the Town with the subject property, a valuation methodology advocated by the Town. Given the evidence that the comparables, although generally similar to the subject property, possessed various superior features, such as more dwelling space, better location, and more land, we cannot conclude that the appraiser's decision to value the subject property at $503,700, a number slightly lower than the sale value of the comparables, was clearly erroneous. The appraiser's conclusion that the value of the subject property should not be adjusted for time was also "rationally derived" from the evidence, which demonstrated that the sales values of the three comparables did not follow the time-adjusted prediction. *Vt. Elec. Power Co.*, 174 Vt. at 472, 807 A.2d at 433. The appraiser's dismissal of the "classic old farmhouse" adjustments on the comparables was also not clearly erroneous, given the lack of evidence in the record supporting this designation. See *Allen v. Town of W. Windsor*, 2004 VT 51, ¶ 5, 177 Vt. 1, 852 A.2d 627 (upholding appraiser's rejection of town's upward adjustment for "quality level" of properties when not supported by the evidence). The appraiser's refusal to apply the "classic old farmhouse" adjustment to the subject property was also sound. Despite the Town's testimony about the premium many buyers place on "classic old farmhouse" properties, the appraiser's rejection of such an adjustment on the subject property was reasonably based on evidence that only one-third of the subject property was "original farmhouse," while the remainder of the home was of a more recent vintage and interior design. See *In re Southview Assocs.*, 153 Vt. 171, 178, 569

A.2d 501, 504 (1989) ("[W]e must defer to the [appraiser] when its findings are supported — even if the record contains contradictory evidence.").

*Affirmed.*