*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-443

JUNE TERM, 2014

| | | |
|---|---|---|
| Michael Cornish | } | APPEALED FROM: |
| | } | |
| | } | Property Valuation and Review |
| v. | } | Division |
| | } | |
| Town of Brookline | } | DOCKET NO. PVR 2012-24 |

In the above-entitled cause, the Clerk will enter:

Taxpayer appeals the decision of the state property tax hearing officer listing his residential property at $2,085,902 for the year 2012. We reverse and remand.

The subject property's principal structure is a premium custom-built log cabin containing 6370 square feet of above-grade living space, a 4526-square-foot basement that includes 2884 square feet of finished living space, and over 3000 square feet of exterior decks. The subject property also includes four other structures located on 267 acres, most of which are in the Vermont Current Use Program. Construction of the residence commenced in 2005 and was mostly completed by 2007. The property was assessed at just under $2 million from 2007 to 2008 and just over $3.5 million from 2009 to 2011.

The Town of Brookline assessed the property for the year 2012 at $3,555,887. The Town used land sales and the Computer Assisted Mass Assessment (CAMA) program to apply a reproduction cost approach to valuing the property. In response to taxpayer's grievance, the town listers reduced the fair market value of the property to $2,188,512. For the most part, the Town arrived at the lower assessment by inserting into its calculation a percentage reduction for physical, functional, and economic depreciation related to age, condition, functionality, and location. Notwithstanding the significant reduction in value, taxpayer then appealed to the Board of Civil Authority (BCA), which increased the fair market value of the property back up to $3,509,700. Taxpayer then appealed to the state hearing officer, who found the listers' determination of $2,188,512 to be the most persuasive evidence of fair market value. After calculating an excluded reduction, the hearing officer placed the subject property on the Town's grand list at $2,085,902.

Taxpayer's two principal arguments on appeal are: (1) the Town's manipulation of quality level input data to increase the fair market value of his property violated the proportional contribution clause set forth in Chapter I, Article 9 of the Vermont Constitution; and (2) the Town's violations rendered every stage of the proceedings constitutionally infirm, thereby justifying the extraordinary remedy of this Court striking the manipulated data and entering a new number supported by the evidence—not only for the contested year but for every year that the manipulated data was part of the calculation of the assessment of the subject property.

Taxpayer's first argument arises from the Town's insertion of a quality factor of 10 for his residence, when no other residential property in the town had a higher rating than 4.5. He asserts that the Town intentionally manipulated that quality factor to arrive at its preconceived notion of what the assessed value of the house should be. He compares this case to Allen v. Town of West Windsor, 2004 VT 51, ¶ 5, 177 Vt. 1, where the record before the state appraiser established that the town listers manipulated quality-level inputs in its computer program to arrive at appraised values matching the prices paid for recently sold properties. Because the upward adjustment to the quality-level input was not applied uniformly to all town properties in that case—but rather only to recently sold properties—the owners of recently sold property were paying a disproportionate amount of property taxes. Id. Accordingly, we affirmed the state appraiser's decision to reduce the assessed value of the five grieving taxpayers' properties. Id. ¶ 10; see M.T. Assocs. v. Town of Randolph, 2005 VT 112, ¶¶ 12, 17, 179 Vt. 81 (stating that taxpayers claiming violation of proportional contribution clause have burden of showing absence of any rational basis for government's differing treatment of similarly situated taxpayers).

As we stated in Allen, "[t]he overriding goal is to ensure that, whatever the fair market value of a property might be, its listed value corresponds with the listed value of comparable properties so that no taxpayer pays more than his or her fair share of the property tax burden." 2004 VT 51, ¶ 9. In contrast to Allen, however, taxpayer in this case has not demonstrated that his property is assessed at more than its fair market value or higher than other town properties relative to fair market value. In other words, taxpayer has not shown that he is paying a disproportionate amount of the town tax burden. Cf. id. ¶ 10 (stating that evidence supported state appraiser's determination that there was disparity between listed value of recently sold properties and comparable properties that had not been recently sold). Rather, he has demonstrated only that his residence was the only one in the town to be given a quality rating of 10, a rating significantly higher than any other property in the town.

Taxpayer argued before the state hearing officer that his property was assessed higher than other comparable properties in the area. The Town challenged taxpayer's comparable properties—as well as taxpayer's evidence valuing his property at approximately $1.5 million—and offered comparable properties of its own. Both sides presented expert testimony regarding the propriety of assigning a quality value of 10 to taxpayer's residence. After finding no evidence of sales to support the property's fair market value, the hearing officer stated, in relevant part, as follows:

> The site inspection indicated a property that was in fact unique in Brookline, but beyond being a large log structure, did not have any quality items in the construction that were much different than in most well built houses in the area. The size of the house at over 6000 sq. ft. above grade and with finish in the basement functions on three levels and is clearly an over improvement for the area.
>
> The lister value of $2,188,512 . . .[,] the most conclusive evidence of the market value[,] was [established] by utilizing land sales and the Marshall/Swift Cost Manual with applied depreciation. . . . [T]he listers testified they relied on the reproduction cost approach for an estimate fair market value.

2

The use of a quality grade of 10 by the BCA to establish a value is not supported by any findings of fact on the part of the BCA. The BCA actually stated that they denied the appeal under the grounds [that taxpayer] did not provide enough evidence of market value yet they set an assessed value of $3,509,700 without offering any market data to indicate how they arrived at the assessed value. Therefore, in conclusion, I find the listers testimony setting market and assessed value of the [subject] property at $2,188,500 to be the most conclusive . . . as of April 1, 2012.

We conclude that the matter must be remanded for further consideration because, although the state hearing officer found no support for the BCA's use of a quality rating of 10 for taxpayer's residence, that rating remained part of the listers' calculation of assessed value that was accepted by the hearing officer. The listers' significant reduction in the assessed value of the subject property following taxpayer's grievance was achieved by applying depreciation factors that had not been previously inserted into the assessment calculation—not by changing the quality rating of the residence.

Taxpayer would have this Court insert a quality rating of 4.5—the highest number applied to other well-constructed residences in the town—in place of the 10 rating given to the subject property, and then order that his property be assessed based on the ensuing calculation. We decline to do so. As noted, taxpayer has not demonstrated that the $2,188,512 assessment is disproportionately high relative to other town properties. On remand, the hearing officer must address the inconsistency noted above and reconsider his decision. The ultimate goal remains to assess taxpayer's property proportionately to other town properties relative to fair market value. Insofar as the hearing officer's review of the Town's assessment is de novo, we agree with taxpayer that, in determining the fair market value of the subject property, the hearing officer may consider comparable sales that occurred after the listers initially assessed the property.

Taxpayer also argues that we should apply any reduced assessment retroactively because of the conflict of interest that contaminated the proceedings. Taxpayer refers to the Town's principal witness before the state hearing officer, who: (1) had done appraisal work in connection with bank loans that taxpayer received to build his home; (2) had been a town lister involved in establishing the lister card for the subject property, but was not a town lister in 2012 when taxpayer grieved his assessment; and (3) provided evidence and presented argument to the BCA concerning the subject property while a member of the BCA. We conclude that taxpayer has waived this argument. See Garilli v. Town of Waitsfield, 2008 VT 91, ¶ 7, 184 Vt. 594 (mem.) (refusing to address town's constitutional due process arguments because they were not raised in proceedings before state appraiser). During the second day of the hearing before the state hearing officer, taxpayer's attorney began to question the Town's principal witness regarding his alleged impartiality at the BCA hearing. When the hearing officer asked the attorney if he was "raising the issue of a conflict," the attorney responded "well, no," but "the first hurdle is to overcome a presumption of validity. . . . [I]f you're telling me that that presumption is in the rear view mirror, then I will certainly move on." The hearing officer responded that he had already decided that taxpayer had overcome the presumption of the validity of the Town's assessment, and taxpayer's attorney stated: "Okay."

Under these circumstances, taxpayer cannot now claim a conflict of interest on appeal to this Court. The state hearing officer's review of the BCA's decision is de novo, and the hearing

officer stated that taxpayer had overcome any presumption of validity as to the Town's assessment of the subject property. Moreover, we do not agree that this is an extreme case where de novo review is insufficient because systematic or structural errors undermine confidence in the proceedings. See In re JLD Properties of St. Albans, LLC, 2011 VT 87, ¶¶ 9-12, 190 Vt. 259 ("In contrast to errors of a 'structural' nature, due process violations resulting from an individual decisionmaker's personal bias have often been held to be subject to cure on de novo review.").

Reversed and remanded.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice