*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-031

JULY TERM, 2016

| | |
|---|---|
| Michael Cornish | }    APPEALED FROM: |
| | } |
| | }    Property Valuation and Review |
| v. | } |
| | } |
| Town of Brookline | }    DOCKET NO. PVR 2012-24 |

In the above-entitled cause, the Clerk will enter:

Taxpayer appeals from the state hearing officer's decision that set the 2012 fair market value (FMV) of his property at $2,085,902. This is taxpayer's third appeal following a series of remands, and he continues to argue that the hearing officer erred in setting the 2012 FMV of his residential property at $2,085,902. We affirm.

We begin with the procedural history of this case, relying on facts set forth in our first decision in this case. See Cornish v. Town of Brookline, No. 2013-443, 2014 WL 3714886 (Vt. June 12, 2014) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx. Taxpayer largely completed the construction of a very large custom-built log cabin in 2007. The home has 6370 square feet of above-grade living space, a 4526-square-foot basement, and over 3000 square feet of exterior decks. The property also includes four other structures located on 267 acres. The Town of Brookline assessed taxpayer's property at just under $2 million from 2007 to 2008 and just over $3.5 million from 2009 to 2011. In 2012, the Town assessed the property at $3,555,887. The Town viewed the property as unique and determined that there were no comparable properties in the town. It therefore used land sales and the Computer Assisted Mass Assessment (CAMA) program to apply a reproduction cost approach to valuing the property. The CAMA programs requires different inputs to determine valuation, and for this property, the Town applied a quality-level input of 10. Taxpayer grieved the assessment, and the Board of Listers reduced the FMV to $2,188,512. The Board of Listers kept the 10 quality rating, but applied modifiers for physical, functional, and economic depreciation. Taxpayer then appealed to the Board of Civil Authority (BCA), which increased the FMV to $3,509,700. Taxpayer then appealed to the state hearing officer, who found the listers' determination of $2,188,512 to be the most persuasive evidence of FMV. After calculating an excluded reduction, the hearing officer placed the subject property on the Town's grand list at $2,085,902.

In his first appeal to this Court, taxpayer argued that the Town had manipulated the quality level input data to increase the FMV of his property in violation of the proportional contribution clause of the Vermont Constitution. See id. Taxpayer asked this Court to strike the manipulated data and enter a new number supported by the evidence for every year that the data was part of the calculation of the assessment of his property. Id. at *1. We concluded that taxpayer failed to show that his property was assessed at more than its FMV or higher than other town properties relative to FMV. Id. at *2. We remanded the case, however, for further consideration, finding an

inconsistency in the hearing officer's decision. The hearing officer had stated that he found no support for the BCA's use of a quality rating of 10 for taxpayer's residence, yet that rating remained part of the listers' calculation of assessed value that the hearing officer accepted. Id. at *3. Notwithstanding this inconsistency, we rejected taxpayer's argument that this Court should insert a quality rating of 4.5—the highest number applied to other well-constructed residences in the town—in place of the 10 rating and order that his property be assessed accordingly. We reiterated that taxpayer failed to show that his assessment was disproportionately high to other town properties. "On remand," we stated, "the hearing officer must address the inconsistency noted above and reconsider his decision," with the ultimate goal of assessing taxpayer's property proportionately to other town properties relative to FMV. Id.

On remand, the hearing officer concluded that while the listers had employed an unusually high quality rating for the town, its selection was consistent with the listers' view that: the property was unique in size and style in the town, there were no properties comparable to the subject property in the town, and a grade of 10 best represented the quality of construction and the property's unique log structure. The hearing officer noted that the quality rating had, in effect, been modified by the listers' application of depreciation within the CAMA system.

Taxpayer again appealed, arguing that the hearing officer continued to erroneously incorporate a quality rating of 10. We again reversed and remanded. See Cornish v. Town of Brookline, No. 2015-059, 2015 WL 4771569 (Vt. Aug. 12, 2015) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx. We explained that our first decision had directed the hearing officer to clarify or explain the inconsistency between its finding that a quality rating of 10 was not supported by the facts, and its acceptance of a valuation that incorporated that quality rating, and we found that that the hearing officer had not addressed our concern. Id. at * 2. While "the hearing officer acknowledged taxpayer's argument that the valuation was inequitable because the quality rating was unsupported, it did not make any findings on why the quality rating of 10 was not found to be supported by the evidence." Id. We stated:

> The hearing officer previously specifically found, based on the exact same evidence, that the quality of construction of the property was not "much different than in most well built houses in the area," and concluded that "the use of a quality grade of 10 by the BCA to establish a value is not supported by any findings of fact on the part of the BCA." In apparently reversing its position on the propriety of relying on a quality grade of 10 for the purpose of the CAMA analysis, the hearing officer merely stated that the quality rating was "consistent with the Lister's view that the property is unique in size and style in Brookline." The hearing officer did not state whether [he] found a 10 rating was appropriate for taxpayer's property and, if so, based on what evidence.
>
> Moreover, in the first decision, the hearing officer expressly noted the lack of reliable market data concerning sales of comparable property, and accordingly opted to apply a cost-based approach to valuing the property. Its rationale on remand that the cost-based approach using the aberrantly high quality grade yielded a valuation that was not disproportionately high relative to comparable properties in Brookline suggests that it had sufficient alternative evidence, based on the sales of comparable properties, to support its

2

> valuation. This suggestion is squarely at odds with its prior conclusion that there was not adequate evidence concerning comparable properties to support a market-based valuation here. The fact that the hearing officer previously applied depreciation factors to account for a stagnant real-estate market, thereby lowering the valuation relative to the BCA's valuation, does not explain or support the quality rating applied to the property. If the standardized CAMA tool is used to determine value on a cost basis, it must be used in a non-arbitrary way.

Id. at *2-3.

The hearing officer issued a third decision in December 2015. He recounted that in his first decision, issued in September 2013, he stated that "the use of a quality grade of 10 by the BCA to establish a value is not supported by any findings of fact on the part of the BCA." That statement, the hearing officer explained, was intended to contrast the BCA's findings (or lack thereof) with the parties' testimony and evidence submitted over the course of two days of hearings, evidence that the hearing officer did find supported the listers' use of a quality grade of 10. The hearing officer determined that the Town's evidence credibly reflected that a quality grade of 10 best reflected the size, style, and quality of the residence, and chose it because it best reflected the quality of the construction and the fact that it was the most unique structure in the town. The hearing officer explained that he also credited testimony by the Town's witness regarding the style, appeal, and exceptional quality of the subject property. After describing the property's various components, the hearing officer reiterated that the overall appeal and magnitude of the house was unlike any other property in town. He added that, based on his site inspection, he found the property unique even though it did not have any individual quality items in the construction that were much different than in most well-built houses in the area. While it was not unusual, for example, for other well-built houses to have an attribute like a custom kitchen or stone walls, the cumulative effect of the subject property boasting so many high-end attributes put it in a class of its own for the area. The hearing officer thus found that the evidence supported a finding that the subject property overall was an exceptional home that was unique to the area. Taxpayer acknowledged that his residence was unique in size and style. Indeed, there was agreement from both parties that the property was of excellent quality.

The listers' value, he continued, which he found was appropriately based on the cost approach, was also credibly supported by taxpayer's testimony that the cost of construction was between $3 to $4 million. The listers made further reductions for physical, functional, and economic depreciation. The hearing officer was not persuaded by taxpayer's argument that a quality grade of 4.5 was appropriate for his house because that was the highest grade used for other houses in town. He found that this argument simply showed that taxpayer's house was an exceptional property based on the size, style, and quality of his particular property. As the Town's witness testified, moreover, the listers were not impressed by the next highest assessed house in town, finding it to be odd, with a corrugated metal roof and siding, no basement, and not of the quality or appeal of taxpayer's home. The hearing officer previously found that comparable sales were not available within the town, therefore the quality rating used for other homes in town were not directly applicable to taxpayer's home and the use of a different quality rating did not show that the quality rating used was incorrect or arbitrary. Thus, based upon his review of the parties' testimony and exhibits, his site visit, and several rounds of briefing by the parties, the court found that a quality level of 10 was supported by the facts of this case.

3

Finally, the hearing officer explained that in his first decision on remand, he had noted that he also found that taxpayer had failed to show that the listers' value was disproportionately high relative to comparable properties in Brookline. That statement was intended to point out that taxpayer had not satisfied his burden as described by this Court of showing that "his property is assessed at more than its fair market value or higher than other town properties relative to fair market value. In other words, taxpayer had not shown that he is paying a disproportionate amount of the town tax burden." Accordingly, the hearing officer found the April 1, 2012 value of the property to be $2,188,512. This appeal followed.

Taxpayer argues that the hearing officer ignored this Court's instructions on remand. He reiterates his assertion that the Town used falsified data—a quality rating of 10—to arrive at a valuation. He maintains that the hearing officer did not engage in a rational analysis in reaching its decision. Taxpayer also argues that the hearing officer's conclusions contradict his findings and the credible evidence of build quality.

We begin with an overview of the appeal process. The hearing officer considers appeals from the BCA de novo. 33 V.S.A. § 4467. He or she must determine the correct valuation of property and ensure that the listed value of property corresponds to the listed value of comparable properties within the town. Id. To this end, the hearing officer must first determine the property's FMV, and next "equalize[]" this value "to insure that the property is listed comparably to corresponding properties in town." Dewey v. Town of Waitsfield, 2008 VT 41, ¶ 2, 184 Vt. 92 (citation omitted). "[A] difference between listed and fair market values of real property is permissible as long as the ratio between listed and fair market values is consistent among properties." Id. (citation omitted). "The burden of persuading the trier of fact that his property is over-assessed, which is the underlying issue, remains with the taxpayer throughout the entire proceeding." Id.

On review, we defer to the hearing officer's decision and will set aside findings of fact "only when clearly erroneous." Barnett v. Town of Wolcott, 2009 VT 32, ¶ 5, 185 Vt. 627 (mem.). Where the hearing officer's valuation is supported by some evidence from the record, "the appellant bears the burden of demonstrating that the exercise of discretion was clearly erroneous." Garilli v. Town of Waitsfield, 2008 VT 91, ¶ 9, 184 Vt. 594 (mem.) (quotation omitted).

We find no error here. The hearing officer explained, as directed by this Court, why he concluded that a quality rating of 10 was appropriate for taxpayer's property.[*] He also clarified that it was the BCA that provided no findings to support the use of this quality rating, and he contrasted this with his own conclusion, which he based on evidence presented at the hearing and on his site visit. We reject taxpayer's assertion that the Town used a quality rating of 10 simply because a lister "felt like doing it." First, this is a de novo appeal, and it is for the hearing officer to determine the property's FMV. In any event, the Town's witness testified in detail as to why the Town assigned a rating of 10 to the property. He also testified to the limited guidance provided by the CAMA handbook for "exceptional" homes. He explained that the handbook provided only that "[f]or exceptional homes beyond excellent quality, users may enter values from seven to twelve." Taxpayer asserts that the size, features redundancy, architectural style, and method of construction are not pertinent to determining a quality rating. He cites to a document, however, that does not provide support for this proposition. This document similarly does not contain the caveat, cited by taxpayer, that the Town cannot use a quality grade of 10 "without a thorough

_____

[*] Responding to our decision, the hearing officer also clarified his statement about the absence of comparable properties in the town.

4

understanding of the Marshall & Swift cost manual for exceptional homes." Taxpayer also fails to show that the hearing officer "double counted" the features present in his home. We conclude that the hearing officer's valuation, including its reliance on a quality rating of 10, is supported by evidence in the record. It was not arbitrary, as taxpayer asserts.

Taxpayer appears to suggest that his property is not being "listed comparably to corresponding properties in town." Dewey, 2008 VT 41, ¶ 2 (citation omitted). We rejected this argument in taxpayer's first appeal. See Cornish v. Town of Brookline, No. 2013-443, 2014 WL 3714886, at *2-*3 (concluding that taxpayer failed to show that his assessment was disproportionately high to other town properties). His reliance on Allen v. Town of W. Windsor is misplaced. 2004 VT 51, ¶ 4, 177 Vt. 1 (affirming state appraiser's decision to reduce listed value of taxpayers' properties to achieve tax uniformity where evidence showed that town did not list all properties at 100% of their FMV; town treated properties that were subject of recent sales differently than other properties).

In asserting that the hearing officer's conclusions contradict his findings and "the credible evidence of build quality," taxpayer wars with the hearing officer's assessment of the weight of the evidence. We do not reweigh the evidence on appeal. See Mullin v. Phelps, 162 Vt. 250, 261 (1994) (role of Supreme Court in reviewing findings of fact is not to reweigh evidence or to make findings of credibility de novo). The hearing officer's findings are supported by evidence in the record, and they support the hearing officer's conclusion. Taxpayer's disagreement with the hearing officer's conclusion does not demonstrate error. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (explaining that arguments which amount to nothing more than a disagreement with factfinder's reasoning and conclusion do not make out case for abuse of discretion). We conclude that the hearing officer adequately addressed the concerns identified in our prior decisions.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice