2009 VT 32

**Pietertje A. BARNETT v. TOWN OF WOLCOTT**

[970 A.2d 1281]

No. 08-317

¶ 1. March 11, 2009. Taxpayer Pietertje Barnett appeals from a decision by the state appraiser setting the value of taxpayer's property in Wolcott at $304,500. Taxpayer contends that the appraiser erred in determining the highest and best use of the property, made erroneous factual findings, and therefore arrived at an incorrect fair market value for the property. We disagree and affirm.

¶ 2. Taxpayer owns a parcel of approximately 25 acres of land in Wolcott. The parcel has been approved as a nine-lot subdivision, with lots ranging from 1.17 to 7.52 acres each. As part of a town-wide reappraisal, the listers determined that the fair market value of the property — as of April 1, 2007 — was $346,500. Taxpayer grieved this action, and was successful in having the assessment reduced to $298,200. The Board of Civil Authority subsequently affirmed this assessment, and taxpayer appealed to the director of the Property Valuation and Review Division, who referred the appeal to an appraiser. See 32 V.S.A. § 4465.

¶ 3. Before the state appraiser, taxpayer presented evidence suggesting that the highest and best use of the property, as of April 1, 2007, was "for sale as an incomplete development and that the fair market value for that use was $153,000."

Taxpayer further suggested that certain site work was required before any of the lots could be sold, under the terms of the subdivision permit obtained from the Development Review Board (DRB). Ultimately, the state appraiser disagreed with taxpayer regarding the highest and best use of the property, found that the site work was *not* a condition of the DRB permit, and set the value of the property at $304,500.

¶ 4. The goal of property-tax appraisal is to ensure that no property owner pays more than his or her fair share of the tax burden; this is accomplished by listing all properties at fair market value. See *Allen v. Town of West Windsor*, 2004 VT 51, ¶ 9, 177 Vt. 1, 852 A.2d 627; 32 V.S.A. §§ 3431, 3481. Fair market value is "the price which the property will bring in the market when offered for sale and purchased by another." 32 V.S.A. § 3481(1).

¶ 5. We will set aside the state appraiser's findings of fact only when clearly erroneous, in light of the fact that the appraiser has had the opportunity to judge the credibility of witnesses and weigh the evidence. See *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 300, 629 A.2d 325, 329 (1993). Our review of legal conclusions, by contrast, is nondeferential and plenary. *M.T. Assocs. v. Town of Randolph*, 2005 VT 112, ¶ 6, 179 Vt. 81, 889 A.2d 740. In appraisal cases, the finder of fact has an "affirmative duty to make specific findings" as to comparable properties and the resulting listed value of the subject property. *Town of Walden v. Bucknam*, 135 Vt. 326, 327, 376 A.2d 761, 763 (1977) (quotation omitted).

¶ 6. Taxpayer first contends that the state appraiser erred by failing to "treat the subject property as a single parcel consisting of an incomplete subdivision as of the date of the appraisal." The argument subsumes several related contentions: (1) all necessary permits are not yet in place; (2) taxpayer has binding obligations to the Town fire and highway de-

partments; and (3) one lot is subject to a potential land-use dispute regarding a right of way. All three arguments are essentially factual.

¶ 7. As to the first contention, the state appraiser found that the DRB issued the subdivision permit in 2006. The DRB's decision and the permit are reproduced in the record, and do not explicitly require that any further permits be acquired. Taxpayer contends, however, that the parcel will not be useable as a subdivision until "other permits" are acquired. The only permit taxpayer mentions explicitly is a highway-access permit. See 19 V.S.A. § 1111. Taxpayer does not, however, claim to have raised this specific contention below, and our review of the record suggests that it is raised for the first time on appeal. Thus, we find no basis to disturb the appraiser's decision on this basis. See *Maguire v. Gorruso*, 174 Vt. 1, 9, 800 A.2d 1085, 1092 (2002) (stating that arguments not raised below are waived); see also *Scott Contruction, Inc. v. City of Newport*, 165 Vt. 232, 236, 683 A.2d 382, 384 (1996) (noting that the "mere existence of uncertainty in the regulatory process" does not bar valuation as a development).

¶ 8. The second related contention is that taxpayer is required to incur certain costs before selling the lots in the subdivision: namely, taxpayer avers that she must improve a certain off-property road intersection, must pay an "impact fee" to the Wolcott Fire Department, and must "reclaim" an old gravel pit on the property. The appraiser found that the road improvement was not mandatory, that the impact fee was a "self-inflicted burden" and that the impact of the gravel pit on property value was taken into account by assigning lower land grades to the parts of the property the pit affects. There was no clear error here. No plans or engineering documents were produced in support of taxpayer's statement about the cost or necessity of upgrading the road, and the document purportedly imposing the obli-

gation is not phrased in mandatory terms. Similarly, there was support in the record for the finding that the payment to the fire department was voluntary, and for the proposition that the gravel pit's presence was accounted for by the lower land grades. Thus, taxpayer has not met her burden of showing clear error. See V.R.C.P. 52(a); *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994) (in order to demonstrate clear error, party must meet "heavy burden" of showing that there is no credible evidence to support the disputed finding).

¶ 9. Likewise, the only evidence presented concerning the "potential land use dispute" on one of the lots was speculative and conclusory, and the state appraiser was not bound to credit it. Taxpayer presented no evidence of the dispute's impact on fair market value, and presented no evidence to suggest that any particular effort had been made to resolve the dispute without litigation. Although taxpayer now contends that she is "left with two choices: (1) allow the trespass to continue which would render the lot undevelopable; or (2) resort to a legal remedy," taxpayer failed to present any evidence of the costs associated with either option. Nor are we convinced, on this record, that the appraiser was bound to find that these were in fact the only two options.

¶ 10. Taxpayer next argues that the appraiser erred in relying, in part, on the asking prices for nearby properties in arriving at the fair market value of the subject parcel. Taxpayer is quite right that asking prices — unaccepted offers to sell — are not good evidence of fair market value, because they reflect a mere hope rather than "the price which the property will bring in the market when offered for sale and purchased by another." 32 V.S.A. § 3481(1); see also *Penna v. State Highway Bd.*, 122 Vt. 290, 294, 170 A.2d 630, 634 (1961) (stating that, in condemnation proceeding, evidence of

asking price for neighboring property was "so lacking in probative value that we are unable to conceive how the jury could have made any use of it at all"); *Gupta v. Cuyahoga County Bd. of Revision*, 683 N.E.2d 1076, 1079 (Ohio 1997) (holding that unaccepted offers to purchase are not presumed to reflect fair market value). Here, however, the appraiser appears to have simply noted that the asking prices were in the same general range as the prices arrived at by a different methodology, and that the asking prices therefore did not undermine the appraiser's conclusion. Indeed, in ruling on taxpayer's motion to reconsider, the appraiser expressly disavowed reliance on the asking prices. There was other support in the record for the appraiser's valuation decision, and accordingly we will not disturb it on appeal.

¶ 11. Taxpayer's final claim of error is that the appraiser incorrectly determined that the highest and best use of the property was "for sale and single family residential use of the nine lots in the subdivision." Principally citing *Giorgetti v. City of Rutland*, 154 Vt. 9, 572 A.2d 933 (1990), taxpayer contends that the only permissible measure of fair market value for this lot was as a "single lot plus the value added by any issued permits." Taxpayer's argument is premised entirely on the assertion that the individual lots could not be sold at the time of the appraisal. The reasons taxpayer gives for this infirmity — that the subdivision was approved only "as submitted" and that therefore the road must be improved and the fire department paid before lots may be sold — have already been rejected, however.[*]

_____
[*] Our decision today is limited to our review of the state appraiser's decision and is not a ruling on the merits of the subsidiary issues considered herein, such as the necessity of improving Brookview Lane, the presence or absence of required permits, or whether the disputed

See *supra*, ¶¶ 7-10. Because taxpayer has failed to show that the appraiser erred in any other respect, there was also no error in basing the fair market value of the property on its use as a nine-lot subdivision of single-family homes. See *Scott Constr.*, 165 Vt. at 235-36, 683 A.2d at 383-84 (upholding appraisal of property based on its value if subdivided, where property had no permits in place and was in use as a farm at time of appraisal; taxpayer's "vague and conclusory" evidence to the contrary did not demonstrate clear error).

*Affirmed.*

_____
use of the right-of-way on Lot 1 has put a cloud on the title to that lot. Rather, we simply hold that taxpayer has failed to carry her burden of showing that the state appraiser erred in arriving at the value he did.