*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-082

OCTOBER TERM, 2013

| | | |
|---|---|---|
| Peter Dernier | } | APPEALED FROM: |
| | } | |
| | } | Property Valuation and Review |
| | } | Division |
| v. | } | |
| | } | |
| Town of Weston | } | DOCKET NO. PVR 2011-27 |

In the above-entitled cause, the Clerk will enter:

Taxpayer Peter Dernier appeals a decision of the state appraiser finding that taxpayer's property in the Town of Weston has a fair market value of $110,000. Taxpayer argues that the value is arbitrary and lacks any methodology to support it. We affirm.

Taxpayer owns a 2-acre parcel improved with a residence and outbuildings. Taxpayer purchased the property in 2005 for $275,000. At the time of purchase, taxpayer was unaware that there was a heating oil spill on neighboring land that had contaminated the property. In 2003, a water sample test revealed that there were organic compounds in the river behind taxpayer's property. That same year, a remediation was done at the neighboring contaminated residence. Between July 2003 and July 2004, tap water tests of taxpayer's property were conducted, and the State supplied taxpayer bottled water. After test results indicated no volatile organic compounds in the water between April 2004 and July 2004, bottled water deliveries were discontinued.

In 2007, the Town assessed the property at $175,750. In 2008, taxpayer appealed the Town's assessed value and, after a decision by the state appraiser, by a negotiated agreement the property was valued at $41,000—the assessed value of solely taxpayer's land and not the improvements. The rationale was that because of the contamination the property was uninhabitable and therefore the highest and best use was as vacant land.

The listers set the 2011 value of the property at $110,000. Taxpayer grieved the assessment, and, in response, the listers did not change assessment, explaining that although the property had been valued as vacant land previously, taxpayer continued to live on the property demonstrating that the property had value beyond simply vacant land. The listers explained that $110,000 was reasonable in that the contamination had been remediated. Taxpayer appealed to the Board of Civil Authority, which affirmed the Town's appraisal. Taxpayer appealed to the state appraiser. The state appraiser conducted a site visit and held a de novo hearing.

Taxpayer testified that although his family lives in the house, he believes that the property is not marketable and that it is not worth more than $41,000. Taxpayer submitted letters from an insurance broker, a mortgage lender, an appraiser, and a real estate broker to support his argument that the property could not be financed, insured or listed with a real estate broker. Taxpayer conceded that current water tests did not reveal any contamination, but argued that even with clean well tests, the property was simply not marketable. Taxpayer contended that the remediation was not done properly so there was a chance of future contamination and, consequently, no future prospective buyer would want the property. Taxpayer submitted a 2008 report from a consultant, opining that there was insufficient evidence to show that the fuel oil spill on the adjoining property was fully remediated and that therefore the risk to taxpayer's drinking supply had not been eliminated.

The Town listers testified that the property was remediated and the water samples have been free of contamination. The listers explained that they did not accept that once a property was contaminated it is never usable again. The listers concluded that based on the remediation, the property was usable and saleable again. The listers submitted into evidence a report from a state employee responsible for the remediation, stating that the State's remediation efforts were done properly and responding to the concerns highlighted by taxpayer's consultant.[*] The listers also submitted sales from three comparable properties to support their valuation of $175,000. None of the comparable properties were known to have been a previously contaminated petroleum site.

In a written order, the state appraiser found that the highest and best use of the property is as a residential family home. The state appraiser found that the Town's comparable properties were an appropriate measure of fair market value insofar as taxpayer's property was being used as a residence and the remediation was complete. In response to taxpayer's claim that his property did not have value because of the prior contamination, the state appraiser found the letters submitted by taxpayer were unpersuasive to show that taxpayer's property was not marketable. The appraiser explained: "[taxpayer] has not tested the market in any way since completion in 2008 of the remediation efforts to determine if in fact there is no market." The state appraiser noted that the remediation is complete and no contamination of the water supply has been found by the state or taxpayer's expert. The state appraiser concluded that the fair market value was $110,000.

Taxpayer argues that the Town's valuation is incorrect because it does not account for the past contamination of his property and assigns value to his property in an arbitrary way. When a taxpayer grieves an assessment to the state appraiser, there is a presumption that the Town's assessment is valid. City of Barre v. Town of Orange, 152 Vt. 442, 444 (1989). If the taxpayer presents evidence that his property was appraised above fair market value, then the presumption disappears and "it is up to the town to introduce evidence that justifies its appraisal." Adams v.

_____

[*] The report emphasized that only trace levels of MTBE were ever found in taxpayer's well and that those levels dropped to a non-detectable level in a short time. Further, it explained that the MTBE may not have come from the heating fuel spill; it was formerly used as a gasoline additive and could have come from a small gasoline spill at taxpayer's property. In any event, the state environmental analyst stated that the remediation was done thoroughly and completely.

Town of West Haven, 147 Vt. 618, 619-20 (1987).  Even when the presumption of validity disappears, however, the ultimate burden of persuading the state appraiser that the Town's appraisal is incorrect "remains with the taxpayer."  Id. at 620 n.*.

In this case, taxpayer asserts that the fair market value of $110,000 is unsupported by any methodology.  According to taxpayer, the figure was a compromise value between the $175,750 and $41,000, and this kind of compromise is a wholly arbitrary and unacceptable means to set fair market value.

The Town admits that the initial assessed value of $110,000 was "a compromise figure" between the value of $175,750, based on sales of comparable properties, and $41,000, the assessed value of solely the land.  Before the state appraiser, the Town argued for the higher appraisal value of $175,750, which was supported by the comparable sales offered by the Town.  The Town claims that any error by the state appraiser's decision in setting the value of the property lower than its fair market value does not prejudice taxpayer.

On appeal, we accord deference to decisions of the state appraiser and "will set aside the state appraiser's findings of fact only when clearly erroneous."  Barnett v. Town of Wolcott, 2009 VT 32, ¶ 5, 185 Vt. 627 (mem.).  Where the state appraiser's valuation is supported by some evidence from the record, "the appellant bears the burden of demonstrating that the exercise of discretion was clearly erroneous."  Garilli v. Town of Waitsfield, 2008 VT 91, ¶ 9, 184 Vt. 594 (mem.) (quotation omitted).

Here, although not explicit, it appears that the state appraiser credited taxpayer with bringing forward enough evidence to destroy the presumption of validity in the Town's valuation, but ultimately concluded that taxpayer's evidence was not credible.

The record contains sufficient evidence to demonstrate that taxpayer burst the presumption of validity.  Evidence also supports the state appraiser's decision not to ultimately credit taxpayer's evidence demonstrating that the land had no value and was not marketable.  As the state appraiser explained, taxpayer's family continued to live on the property and a full remediation was completed.  In addition, taxpayer had not actually tested the market for his property.  It is up to the appraiser "to judge the credibility of witnesses and weigh the evidence."  Barnett, 2009 VT 32, ¶ 5.

On the other hand, the state appraiser credited the Town's three comparable sales, which supported a fair market value of $175,750.  Although not well explained, it appears that the state appraiser discounted the $175,750 to account for the history of contamination and remediation on taxpayer's property.  The state appraiser did not state so explicitly, but noted in his discussion of the comparable sales that none of those sites had experienced contamination and remediation.

The state appraiser's reduction to account for the prior contamination was within his discretion.  Where there is a factor that requires an adjustment to value of property, but there is little evidence to indicate how that factor affects the valuation, it is within the state appraiser's expertise and discretion to make a reasonable adjustment for that factor as long as it "lies within the range of the evidence."   See Breault v. Town of Jericho, 155 Vt. 565, 567-68 (1991)

(explaining that property's proximity to salt shed and town landfill were external factors that could properly reduce value of land and it is within discretion of tax-appraising authority to make reasonable adjustments to fair market value even without evidence of exactly how much this location would reduce value). Here, it was reasonable for the state appraiser to discount the $175,750 to account for the prior contamination. Although there was no evidence to indicate exactly how much this factor would reduce the property's value, the $110,000 was within the range of the evidence and taxpayer has failed to demonstrate that the $110,000 value is erroneous. See id. (noting that administrative body need not explain "precise mathematics that led to a particular decision involving a sum of money" as long as the decision is "within the range of rationality"); see also Boivin v. Town of Addison, 2010 VT 67, ¶ 6, 188 Vt. 571 (mem.) (explaining that any method or combination of methods that result in a "rational determination of fair market value" will be upheld).

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

4