2014 VT 93A

# Vermont Transco LLC v. Town of Vernon

[109 A.3d 423]

No. 13-243

Present: **Reiber, CJ.. Dooley, Skoglund, Robinson and Crawford, JJ.**[1]

Opinion Filed September 19, 2014

---

[1] Justice Crawford did not participate in this amended decision.

*Allan R. Keyes, Thomas M. Dowling,* and *Thomas S. Valente* (On the Brief) of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiff-Appellant.

*Richard H. Coutant* of *Salmon & Nostrand*, Bellows Falls, for Defendant-Appellee.

¶ 1. **Per Curiam.** This property tax appeal concerns the valuation of five electrical substations, seven transmission lines, a fiber-optic line, land, and utility easements located within the Town of Vernon. Taxpayer Vermont Transco LLC challenges a decision of the state appraiser fixing the 2011 listed value of taxpayer's utility property in the Town at $92 million. We reverse

and remand for further findings regarding the lifespan of the property to be used in calculating depreciation, and whether to depreciate the assets in the first year of service.

¶ 2. The equipment at issue in this case was designed and installed to handle the transmission of electric power generated by the Vermont Yankee Nuclear Power Plant and the Vernon Hydro-electric Station. Taxpayer is the successor to Vermont Electric Power Company, Inc. (VELCO), which operates Vermont's electric transmission system.

¶ 3. The town listers set a value of $92,023,693 on the property effective April 1, 2011. This value was upheld by the Town of Vernon Board of Civil Authority. Taxpayer appealed to the state appraiser pursuant to 32 V.S.A. §§ 4461-4467.

¶ 4. On appeal to the state appraiser, the principal issue was the correct method of calculating depreciation with respect to the electrical equipment that comprises almost the entire value of the property. In addition, taxpayer and the Town disagreed about whether the valuation should include the value of utility easements and rights of way held by taxpayer, estimated by the Town's appraiser at $277,100. Finally, the parties disagreed about whether to apply depreciation for certain equipment's first year of life.

¶ 5. In May 2013, the state appraiser issued a ruling setting the total value of the property at $92,023,700. The state appraiser agreed with the Town and its appraiser that an appraisal based on replacement cost new, depreciated in a straight line, provided the most accurate basis for estimating the value of the improvements. The state appraiser did not address taxpayer's arguments that easements cannot be taxed and that depreciation should have been taken for 2010, the first year of service. This appeal followed.

¶ 6. Taxpayer raises four issues on appeal. First, it argues that the state appraiser should have used an alternative nonlinear depreciation schedule — the "Iowa Curve" method — because that method was previously approved by this Court in reviewing the method of property tax appraisal in *Vermont Electric Power Co. v. Town of Vernon*, 174 Vt. 471, 807 A.2d 430 (2002) (mem.). Second, taxpayer contends that the state appraiser's decision on fair market value is not supported by a sufficient analysis of the "core factual issues, including whether fair market value is best estimated by the economic or physical life of the assets, and what those lives are." Third, taxpayer contends that the state appraiser failed to explain its decisions not to depreciate assets during their

first year of service. Finally, taxpayer challenges the state appraiser's decision to include an appraised value for the utility easements.

¶ 7. ■ In an appeal to the state appraiser, a town's property appraisal is presumed to be valid and legal. *City of Barre v. Town of Orange*, 152 Vt. 442, 444, 566 A.2d 951, 952 (1989). If the taxpayer introduces evidence that his or her property was assessed above fair market value, the presumption disappears. *Vanderminden v. Town of Wells*, 2013 VT 49, ¶ 8, 194 Vt. 96, 75 A.3d 598. It is then up to the town to introduce evidence showing "either that it substantially complied with the relevant statutory and constitutional requirements or that its valuation was supported by independent evidence of fair market value." *Id.* ¶8 (quotation omitted). The taxpayer has the ultimate burden of proving that the appraisal was incorrect. *Adams v. Town of West Haven*, 147 Vt. 618, 620 n.*, 523 A.2d 1244, 1245 n.* ·(1987).

¶ 8. We will not disturb the state appraiser's findings of fact unless they are clearly erroneous. *Vanderminden*, 2013 VT 49, ¶ 9. "Our review of legal conclusions, by contrast, is nondeferential and plenary." *Barnett v. Town of Wolcott*, 2009 VT 32, ¶ 5, 185 Vt. 627, 970 A.2d 1281 (mem.).

## I. Depreciation Method

¶ 9. This is the second time in less than fifteen years that the state appraiser and this Court have considered the depreciation schedule and appraised value . of taxpayer's transmission equipment and realty within the Town. See *Town of Vernon*, 174 Vt. 471, 807 A.2d 430 (affirming Town's valuation of taxpayer's utility property). In 1999, the Town conducted a town-wide reappraisal. VELCO, taxpayer's predecessor in interest, appealed the Town's valuation to the state appraiser. Although VELCO owned less property than taxpayer in this case (only one substation and four parcels containing transmission lines), the issues resolved by the state appraiser then were similar to the issues raised before the state appraiser in this case. In particular, the parties and their expert appraisers disagreed about the appropriate depreciation methodology for the electrical equipment. The state appraiser accepted the methodology used by VELCO's expert, including the

application of the Iowa Curve method to the useful life of the equipment.[2] *Id.* at 472, 807 A.2d at 433.

¶ 10. We affirmed the state appraiser on the ground that as the factfinder the state appraiser exercised his discretion appropriately in choosing the Iowa Curve method over straight-line depreciation. *Id.* at 473-74, 807 A.2d at 434-35. We noted that the Iowa Curve method had been employed in a previous tax appeal, *Vermont Electric Power Co. v. Town of Cavendish*, 158 Vt. 369, 611 A.2d 389 (1992). 174 Vt. at 473, 807 A.2d at 435. We ruled that the state appraiser's decision to use the Iowa Curve method was supported at the hearing below by "testimony indicating that [this method was] standard practice in Vermont, endorsed by the State Department of Taxes, and most appropriate for use with transmission lines." *Id.* at 473-74, 807 A.2d at 435. We further noted that "[t]he unswerving goal of the statute is fair market valuation, but there is no single pathway to that goal." *Id.* at 474, 807 A.2d at 435 (quotation omitted).

¶ 11. In this appeal, taxpayer claims that the state appraiser erred in failing to adopt the Iowa Curve method as a matter of law on the basis of this Court's decisions in *Town of Vernon* and *Town of Cavendish*.

¶ 12. At the hearing before the state appraiser in this matter, an accountant employed by taxpayer, Sharon Tucker, testified that in the valuation taxpayer submitted to the Town it used the Iowa Curve method to calculate depreciation. Ms. Tucker testified that taxpayer adjusted the value of all equipment owned by taxpayer through the use of the Handy-Whitman Index of Public Utility Construction Costs to determine its "trended" or "replacement

---

[2] The Iowa Curves were first published in 1935 and are based upon retirement patterns of 176 classes of industrial equipment. R. Winfrey, Iowa Eng'g Experiment Station, Bulletin No. 125, *Statistical Analyses of Industrial Property Retirements* 7-9 (1935). As the state appraiser explained in *Town of Vernon*:

> Essentially this statistical study asserts that depreciation is NOT straight lined, but curvilinear. This method acknowledges a schedule of 30 to 40 year economic life estimates but compensates for remaining functional utility (a factor other than age) by leveling off after accelerated depreciation thereby avoiding excessive depreciation by keeping the depreciation from going to zero.

174 Vt. at 475, 807 A.2d at 436.

cost new" value.[3] Taxpayer assigned each piece of equipment to a thirty- or forty-year curve and calculated a depreciated value on that basis. If a piece of equipment had been owned for longer than the depreciation schedule, taxpayer assigned a fixed value of 24.745%. This calculation resulted in a value of $80,950,830 for the equipment alone. Ms. Tucker testified that taxpayer used the Iowa Curve method because the method had been approved by the state and this Court in *Town of Vernon.*

¶ 13. Taxpayer also presented expert testimony from a professional appraiser, George Silver. Mr. Silver testified that he employed three appraisal methods (comparable sales, cost, and income-based) to determine fair market value, and determined that the cost approach was most appropriate. Depreciation was relevant to his cost analysis. He employed straight-line depreciation over periods ranging from forty-seven-and-a-half to sixty years for different classes of equipment. He calculated a total value of $83,100,000, of which $79,775,250 was attributed to depreciable equipment. The remainder is land or improvements to land not subject to depreciation. Mr. Silver testified that he did not use the Iowa Curve method of depreciation for calculating the fair market value of taxpayer's equipment because he "ha[d] not seen the Iowa Curve being used in market transaction[s], period."

¶ 14. George Sansoucy, an appraiser retained by the Town as an expert witness, employed the same three appraisal methods as Mr. Silver, and also concluded that the cost approach was the best method for valuing taxpayer's property. He also used a straight-line depreciation method in applying the cost approach. He used longer periods of estimated future life for the equipment, ranging from sixty-five to ninety years. He calculated a total value of $92,023,700, of which $91,028,800 was attributed to depreciable equipment. Mr. Sansoucy was critical of the Iowa Curve method, noting that the curves had not been updated since 1942, and that they were not developed for high-voltage transmission lines, such as taxpayer's, which have a relatively long useful life and are not retired in the same fashion as other industrial equipment. He testified that the trend in the utility industry was to move away from the Iowa Curve method because it depreciates property too quickly. He further noted that the Iowa Curve method is typically

---

[3] Both parties used the Handy-Whitman Index for this purpose, and there was no dispute about the replacement cost new for the equipment.

used for book value analysis but not for appraising property for ad valorem tax purposes. The state appraiser found the Town's depreciation method persuasive and adopted its valuation.

¶ 15. █ "It is within the discretion of the state appraiser to determine the most appropriate method for arriving at fair market value," including the method of depreciation. *Town of Vernon*, 174 Vt. at 473, 807 A.2d at 434. Taxpayer argues, however, that principles of finality preclude the Town and the state appraiser from using a different method of depreciation for taxpayer's property than has been approved in prior cases.

¶ 16. █ "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). The same principle applies to appeals from administrative agencies. *In re Green Mountain Power Corp.*, 2012 VT 89, ¶ 73 n.7, 192 Vt. 429, 60 A.3d 654.

¶ 17. █ At no point did taxpayer argue below that the state appraiser was required to use the Iowa Curve method, or that the Town was precluded or estopped from arguing for the use of a different depreciation method than the Iowa Curves. At the hearing, taxpayer's accountant stated only that taxpayer used the Iowa Curve method because that is the method it had used in the past, and its use was approved in *Town of Vernon*. In the proposed findings of fact and conclusions of law that taxpayer submitted to the state appraiser after the hearing, taxpayer stated that the Iowa Curve method "has been *preferred* and *recommended* by the Vermont Department of Taxes Division of Property Valuation and Review" and that the method "was specifically approved by the Vermont Supreme Court in the *Town of Vernon* case." Taxpayer did not argue, however, that the Town could not present an alternative method of depreciation. Nor did taxpayer argue that the state appraiser had to use the Iowa Curve method. Indeed, taxpayer's own appraiser used the straight-line method of depreciation, undermining its argument that no other method was acceptable. Not until this appeal did taxpayer argue that the state appraiser was barred by principles of issue preclusion from using another method. Taxpayer therefore failed to preserve this issue, and we will not address it here.

## II. Lifespan of the Equipment

¶ 18. Taxpayer's second point of error is that the state appraiser accepted the Town's valuation without making specific findings concerning the lifespans of the equipment to be used in depreciation or addressing the proper approach for estimating those lifespans. In its prior decision, the state appraiser set the useful life of taxpayer's transmission lines at forty years and the substation at thirty years. *Town of Vernon*, 174 Vt. at 472, 807 A.2d at 433. In the course of testimony in this case, taxpayer's accountant set the average life of the transmission equipment at thirty to forty years. Taxpayer's appraiser used an "economic life" approach, resulting in estimated lifespans of fifty to sixty years for the equipment. The Town's appraiser employed a "useful life" approach, resulting in estimated lifespans of sixty-five to ninety years.

¶ 19. ▮▮▮ Because there have been great changes in the quantity and value of taxpayer's assets, the state appraiser was not bound by the lifespan figures employed in the 1999 tax year. Taxpayer does not make this argument either. Instead, the state appraiser was obligated to make findings concerning the lifespan of the equipment that are sufficiently detailed for us to determine whether they have support in the record. See *id.* at 474, 807 A.2d at 435 ("The state appraiser has a duty to make clear findings and state how his decision was reached. A mere recitation of the contentions of the parties is not sufficient to support the judgment." (citation omitted)). We agree with taxpayer that although the state appraiser accepted the Town's estimates of useful life as part of a general approval of its methodology, few reasons are provided. The state appraiser's decision states only that "I am persuaded that the town's approach to depreciation is more appropriate than that advanced by Transco. The evidence supports the belief that a 65 year useful life span as advocated by the Town more accurately reflects Transco's assets in this appeal." This finding is insufficient. It is beyond the scope of a state appraiser decision to calculate the depreciated value of each stick of furniture, but it is necessary to a fair process that the basis for accepting the Town's depreciation figures receive a more complete explanation. See *Kachadorian v. Town of Woodstock*, 144 Vt. 348, 351, 477 A.2d 965, 967 (1984) (explaining that state appraiser's "[f]indings of fact must state clearly what was decided and how

the decision was reached" (quotation omitted)). We therefore remand for further findings on lifespans to be used for calculating depreciation.

## III. First Year of Life

¶ 20. Taxpayer next argues that the state appraiser failed to address its argument that equipment acquired during calendar year 2010 should have been depreciated for a year as of April 2011 and simply accepted the Town's decision not to depreciate the equipment without the necessary findings. The Town asserts that the state appraiser had discretion to accept the Town's methodology and was not required to specifically address the issue.

¶ 21. ■ In a property-tax appeal, the state appraiser is required to make findings to support its determination and in the face of conflicting evidence "must state clearly what evidence it credits and why, so that the parties and this Court will know how the decision was reached." *Beach Props., Inc. v. Town of Ferrisburg*, 161 Vt. 368, 371, 640 A.2d 50, 51 (1994). This Court will not affirm a decision that is not supported by adequate findings. *Id.*

¶ 22. ■ Here, the findings are insufficient because the state appraiser failed to explain how it resolved the conflicting testimony. Before the state appraiser, the parties disputed whether taxpayer's property, which was put into service in 2010, should have been depreciated for a full year. There was conflicting testimony as to the appropriate accounting method for depreciating the assets. The state appraiser did not specifically address the issue, but simply stated generally that he was "persuaded that the town's approach to depreciation is more appropriate than that advanced by Transco." This general statement is insufficient for this Court to determine how the state appraiser evaluated the conflicting evidence and why it reached the decision it did. Therefore the matter is also remanded for further findings.

## IV. Inclusion of Utility Easements

¶ 23. ■ ■ This Court has previously held that easements are not subject to Vermont's municipal property tax. *Vill. of Lyndonville v. Town of Burke*, 146 Vt. 435, 438, 505 A.2d 1207, 1209 (1985). Although this principle was established in the special

context of payment of property tax by one municipality to another, our decision reflected a broader underlying concern that it is impossible to identify, value and tax the multitude of easements in a reliable, efficient manner. See *id.* ("It appears unreasonable to conclude that the Legislature intended to cast upon the listers the burden of determining the nature of the titles of various owners of different interests in a piece of real estate." (quotation omitted)). Instead, the value of the fee interest is taxed to the fee owner without setoffs for easements conveyed to third parties. The Town's principal rationale for changing this rule in the case of utility easements is that they are large, obvious, and more valuable than an easement providing seasonal access to a landlocked wood lot. The statutory provisions which govern the real estate tax make no distinction between great and small easements, or between those which are used for the transmission of electricity and those which provide access or convey well rights. In the absence of a statute singling out utility easements for different treatment, we will continue to follow *Village of Lyndonville* in excluding easements from the grand list of properties subject to tax. The state appraiser therefore erred by including the value of the easements in its valuation.

*Reversed and remanded for further proceedings consistent with this opinion.*

¶ 24. **Robinson, J.,** concurring. I join the majority's opinion in its entirety, but write separately to flag an issue that warrants consideration by the legislative and executive branches.[4]

¶ 25. Facilities used in the generation, transmission, or distribution of electric power are valued and included as real estate in a town's grand list. 32 V.S.A. § 3602a. The responsibility for assessing real estate within a town falls to the town listers in the first instance, and then on review to a town's board of civil authority. *Id.* §§ 4041, 4221-4224, 4407-4411. The statutory guidepost for assessing property is fair market value. *Id.* §§ 3620 ("Electric utility poles, lines, and fixtures . . . shall be taxed at appraisal value . . . ."), 3481(1) (appraisal value is estimated fair market value), 4041 (listers to appraise property at its fair market

---

[4] Justice Dooley has identified another issue — a procedural path for review of local assessment determinations that is ill-suited to addressing the issues presented in a case like this. *Post,* ¶¶ 36-38.

value). On appeal from the board of civil authority, the taxpayer bears the burden of persuasion. *Littlefield v. Town of Brighton*, 151 Vt. 600, 601, 563 A.2d 998, 999 (1989).

¶ 26. Under this system, the listers and boards of civil authority of different towns may use different appraisal methods for valuing similar kinds of property. We have recognized that "[a]ppraisal is far from an exact science." *Bowen v. Town of Burke*, 153 Vt. 131, 133, 569 A.2d 452, 453 (1989) (Dooley, J., concurring). If persuasive expert testimony potentially supports each of the different methods used, the various tax assessments relying on differing methodologies may be upheld on appeal. There is no statute, rule, or other authority that requires a uniform approach to valuing, for example, the type of electric transmission facilities at issue in this case.

¶ 27. The Division of Property Valuation and Review (PVR) of the Department of Taxes is empowered to adopt rules "to provide for the uniform administration of the property tax," 32 V.S.A. § 3411(3), but apparently has not adopted any rules concerning the valuation of electric transmission facilities. PVR provides technical assistance and instruction to town listers, and helps towns administer property taxes, including assistance with classes of property that are difficult to appraise. *Id.* § 3411(5), (10); see also *id.* § 3436 (providing for education programs by the PVR director for municipal listers and assessors). Apparently in that capacity, PVR has recommended since at least 1991 that transmission lines be valued using actual costs determined using Handy-Whitman tables, adjusted using Iowa Curve depreciation. That recommendation, however, is not binding on the listers. See, e.g., *Franks v. Town of Essex*, 2013 VT 84, ¶ 14, 194 Vt. 595, 87 A.3d 418 (upholding state appraiser's decision rejecting valuation methodology recommended by PVR).

¶ 28. The nonuniformity of appraisal methodologies from town to town may not be a problem in the context of garden variety appraisals of residential and commercial property. But see *Vanderminden v. Town of Wells*, 2013 VT 49, ¶ 24, 194 Vt. 96, 75 A.3d 598 (urging Legislature or PVR to develop rules for valuing property that lies in multiple towns). But in this case, a single utility owns transmission lines and other distribution facilities in dozens of towns throughout the state. My sense from the record and our prior cases is that, in general, towns throughout the state have for some years used the methodology recommended by PVR.

See *Vermont Elec. Power Co. v. Town of Vernon*, 174 Vt. 471, 472, 473-74, 807 A.2d 430, 434-35 (2002) (mem.) (noting testimony that the Handy-Whitman/Iowa Curve method was standard practice); *Vermont Elec. Power Co. v. Town of Cavendish*, 158 Vt. 369, 371, 611 A.2d 389, 390 (1992) (mem.) (noting that State Board of Appraisers used the Handy-Whitman/Iowa Curve formula to establish the fair market value of electric transmission facilities). Our decision today, which is supported by the statutory and regulatory scheme and the record in this case, may well lead to a patchwork of town valuation practices, so that miles and miles of transmission lines and infrastructure may be depreciated and thus valued and taxed very differently from town to town.

¶ 29. To the extent that a town applies an average equalization ratio to its initial valuation of the transmission facilities, calculated on the basis of *all* classes of properties, see 32 V.S.A. § 4467; *Town of Cavendish*, 158 Vt. at 373-74, 611 A.2d at 391-92, that adjustment may not wash out substantial variations in the appraisals of essentially the same transmission facilities from one town to the next. Moreover, a patchwork scheme imposes on a transmission utility taxpayer the added burden of depreciating and valuing its hundreds of miles of transmission lines in small, town-by-town increments. And a utility seeking predictability, consistency and uniformity might have to appeal dozens of tax assessments, still facing the possibility that disparate adjudicators may be persuaded to adopt different methods.

¶ 30. PVR may be empowered to fix this potential problem through rulemaking. See 32 V.S.A. § 3411(3). The Legislature is likewise well-positioned to address the question of uniformity in appraising electric utility transmission facilities. I offer the matter for consideration by both.

¶ 31. **Dooley, J.,** concurring and dissenting. This high-value complex case was tried by lawyers for the taxpayer and the Town to an administrative hearing officer appointed by the Director of Property Valuation and Review. The fundamental deficiency in the decision is that it consists only of five pages of recitations of the evidence, followed by a short conclusory statement that the hearing officer, called the state appraiser, found the Town's expert witness more persuasive than the experts presented by the taxpayer. Its conclusion was "I find the appellant was not able to overcome the Town's market and assessed value and it shall be set in the 2011 grand list at $92,023,700."

¶ 32. We have repeatedly held, and particularly in property tax appeals, that recitations of the evidence are not findings of fact, and that findings of fact are required.[5] See *Beach Props., Inc. v. Town of Ferrisburg*, 161 Vt. 368, 371, 640 A.2d 50, 51 (1994); *Saufroy v. Town of Danville*, 148 Vt. 624, 625, 538 A.2d 168, 168-69 (1987). Where there is conflicting evidence, the hearing officer "must state clearly what evidence it credits and why, so that the parties and this Court will know how the decision was reached." *Beach Props., Inc.*, 161 Vt. at 371, 640 A.2d at 51. A valuation decision must be supported by adequate findings, or it will not be affirmed. *Id.*

¶ 33. Ironically, one of the main arguments made in the previous case about the valuation of this property, *Vermont Electric Power Co. v. Town of Vernon*, was that the hearing officer's decision failed to contain clear findings and an explanation of how the decision was reached. 174 Vt. 471, 807 A.2d 430 (2002) (mem.). In part because the Town squarely presented the dispute as turning on whether to adopt the Iowa Curve for calculating depreciation and the life expectancy of the property, and because the primary deficiency actually helped the Town, we found we did not have "to speculate on how the conclusion was reached." *Id.* at 474, 807 A.2d at 435.

¶ 34. This case presents a more extreme example of the deficiencies in the earlier administrative decision. There are no valid findings of fact, and we do have to speculate on how the hearing officer reached his decision on the elements of the value of the property and, therefore, on the property as a whole. It is a poor quality decision that does not meet the minimum standards we have announced in many decisions.[6] The parties filed extensive requests for findings, which the hearing officer could easily have

---

[5] Taxpayer has also relied on 3 V.S.A. § 812(a), which requires "findings of fact and conclusions of law, separately stated."

[6] Because the hearing officer concluded that taxpayer "was not able to overcome the Town's market and assessed value," taxpayer has argued that the decision was reached improperly based on a presumption. The improper use of the presumption of validity of the Town valuation has been another source of frequent reversals of administrative valuation decisions. E.g., *Rutland Country Club v. City of Rutland*, 140 Vt. 142, 146, 436 A.2d 730, 732 (1981). In this case, however, the statement to which the taxpayer points is vague and does not necessarily invoke a presumption. While it would have been preferable for the hearing officer to state that taxpayer failed to meet its burden of persuasion, I cannot say that the hearing officer improperly used a presumption.

used to make findings of fact demonstrating the rationale for the decision. Instead, those requests for findings were largely wasted.

¶ 35. I do not believe we can uphold any of the decision, including the rejection of the use of the Iowa Curve. Although I agree with the majority that taxpayer failed to preserve its claim preclusion argument, I do not agree that we can affirm the hearing officer's decision to use straight-line depreciation without adequate findings. To summarize, I agree with sections I, III, and IV of the majority decision. I also agree with section II, but do not believe it goes far enough.

¶ 36. This case raises a strong question as to whether the administrative process is up to the decisionmaking that is called for. At one point in the past, we reversed and remanded virtually every decision that came from the administrative hearing authority for property tax appeals, usually because of inadequate findings. See, e.g., *Spencer v. Town of Danville*, 148 Vt. 626, 538 A.2d 169 (1987); *Saufroy*, 148 Vt. 624, 538 A.2d 168; *Gouin v. Town of Halifax*, 148 Vt. 524, 535 A.2d 788 (1987); *Adams v. Town of West Haven*, 147 Vt. 618, 523 A.2d 1244 (1987); *Roy v. Town of Barnet*, 147 Vt. 551, 522 A.2d 225 (1986). Over time, the appeals process was reformed to the single hearing officer model we now have, and the quality of the adjudication improved so that most administrative decisions are affirmed by this Court. Nevertheless, the quality of adjudication of cases involving high-value commercial and industrial properties has continued to raise concerns. Examples are this case, the previous case involving the same property, and the *Beach Properties* case, 161 Vt. 368, 640 A.2d 50, which involved a large resort.

¶ 37. The Legislature has offered the appealing party a choice in property tax cases: to appeal to either (a) the Director of Property Valuation and Review, or (b) the superior court. 32 V.S.A. § 4461(a). The taxpayer chose the administrative process — I suspect because it thought that the hearing officer would just rely upon the 2002 decision.

¶ 38. In my opinion, a case of this size and complexity, where each party is fully represented by counsel, belongs in superior court where the judge is more used to evaluating expert testimony of this intricacy and is skilled in producing a good quality and complete decision. The Legislature should reconsider the unfettered choice the current statute allows and restrict larger cases, like this, to court appeals. While I would expect the administrative

appeal route to be initially less expensive and more efficient, it is not ultimately so if the chance of reversal on appeal is very high. In any event, the amount in controversy is sufficiently high to warrant a higher-cost adjudication process.