NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 22

No. 2016-238

| | |
|---|---|
| Leo P. Pratt, III | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Andrew Pallito, Commissioner, | |
| Department of Corrections | November Term, 2016 |

Timothy B. Tomasi, J.

Matthew Valerio, Defender General, and Kelly Green, Prisoners' Rights Office, Montpelier, for Plaintiff-Appellant.

William H. Sorrell, Attorney General, and Benjamin D. Battles, Assistant Attorney General, Montpelier, and Robert C. Menzel, Jr., Assistant Attorney General, Waterbury, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **ROBINSON, J.** The central question in this appeal is whether a petitioner can raise in the trial court a challenge to a Department of Corrections' (DOC) disciplinary conviction that was not presented in the underlying DOC proceedings. Petitioner appeals the trial court's dismissal of his Vermont Rule of Civil Procedure 75 appeal of a DOC disciplinary determination. Because petitioner did not preserve before the DOC the issue he raised for the first time before the trial court, we affirm.

¶ 2. The record reflects the following. Petitioner was incarcerated and in the custody of the DOC, and was housed in a single-bed room in the prison's infirmary. A correctional officer

alleged that he instructed petitioner to move from his room to a multi-bed room in the infirmary in order to free up the single-bed room. Petitioner refused and said he would not move. The officer ordered petitioner to move a second time, and petitioner refused again. The officer gave the order a third time and advised petitioner that he would be cited for a disciplinary violation if he did not comply. Petitioner, however, again refused to follow the order. The officer filed an incident report and cited petitioner with a rule violation.

¶ 3.    The DOC follows detailed administrative procedures after an inmate is charged with violating a rule. First, a hearing officer holds a hearing on the alleged rule violation. The hearing officer reviews all available evidence, and may find the inmate guilty of the violation, guilty of a lesser or equal violation, or not guilty of any violation. The hearing officer imposes a sanction if the officer finds the inmate guilty of a violation by a preponderance of the evidence. Vermont Department of Corrections Directive 410.01, Facility Rules and Inmate Discipline 11-12 [hereinafter Facility Rules and Inmate Discipline], http://www.doc.state.vt.us/about/ policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline.pdf [https://perma.cc/4WZ6-3JH6]. Next, the hearing officer submits a Hearing Report Form to the Disciplinary Committee. The Committee reviews the officer's decision to determine whether the charges are supported by a preponderance of the evidence, whether there was compliance with DOC policies, and whether the sanction was proportionate to the violation. The Committee then forwards its decision to the Superintendent. The Superintendent may affirm the Committee's decision, reverse the decision, order a new hearing, or modify the proposed sanction. He or she then forwards the decision to the inmate. Id. at 14.

¶ 4.    The prisoner may file a written appeal with the Superintendent within seven days of receiving the final decision. The policy provides that "[t]he Superintendent will specifically

2

address all appeal issues raised by the inmate in the appeal," and may deny the prisoner's requested relief or "direct any other appropriate action." Id.

¶ 5.      The DOC charged petitioner with violating rule Major B-16, which prohibits "[c]onduct, which disrupts or interferes with inmate safety, security, or the orderly running of the facility."[1] Id. at 20.  The rule provides that it is "[o]nly to be used if another Major 'B' violation is not applicable." Id.  The hearing officer made findings of fact, including that "[y]ou refused multiple direct orders from staff to move from a single cell in the infirmary to a ward," and "[y]our actions of refusing to move interfered with the orderly running of the facility causing an officer to take time from his normal duties to be present for your continued refusals to move."  The hearing officer found petitioner guilty of violating rule Major B-16 and recommended four days of disciplinary segregation, with credit for time petitioner had already spent in segregation for the violation.  The Disciplinary Committee, and subsequently the Superintendent, upheld the hearing officer's decision.

¶ 6.      Petitioner appealed his disciplinary conviction to the Superintendent, arguing that the disciplinary hearing was untimely under DOC policy.  The Superintendent rejected petitioner's argument and upheld the conviction.  Petitioner then filed a petition in the trial court for review of government action under V.R.C.P. 75, in which he again argued that the conviction should be reversed because the hearing was untimely.  After petitioner filed this petition, counsel entered an appearance for petitioner and filed an amended petition.  The only issue raised in the amended petition was that the DOC did not have sufficient evidence to convict petitioner of the rule violation.

---

[1] In the DOC disciplinary documents, the DOC labels this as a B-16 violation, and it is evident from those documents that the DOC is referring to number sixteen on the list of Major "B" violations.  However, in the DOC rules, list item sixteen is actually labeled as B21.  For the purposes of this opinion, we identify the violations using their respective numbers on the list.

3

¶ 7.     Petitioner then moved for summary judgment.  Petitioner argued that Major B-16 may be used only if another rule does not apply, and another rule applied in this case—Major B-14—which prohibits "any disobedience or refusal of an officer's instruction or order that threatens or disrupts institutional security or interferes with the taking of an official institutional headcount." Id. at 20.  The DOC also moved for summary judgment, arguing that there was sufficient evidence to support the DOC's conclusion that petitioner violated Major B-16.  The trial court denied both parties' motions for summary judgment, concluding that there were material facts in dispute regarding whether petitioner violated Major B-14 and therefore whether the application of Major B-16 was appropriate.

¶ 8.     Next, the DOC filed a motion to dismiss, arguing that the trial court lacked subject matter jurisdiction to hear the case because petitioner failed to exhaust all administrative remedies before filing in the court.  The DOC contended that petitioner appealed only the issue of timeliness to the Superintendent, and that the issue of whether petitioner could have been convicted of a different rule was raised for the first time on appeal to the trial court, so petitioner did not exhaust his administrative remedies.  The trial court granted the DOC's motion, determining that petitioner did fail to exhaust all administrative remedies.  The court concluded that exhaustion requires petitioner to submit all claims of error to the DOC before the issues may be heard by the trial court. Petitioner appealed.

¶ 9.     Petitioner argues that he exhausted his administrative remedies because he followed all DOC processes relating to the appeals of disciplinary convictions.  He contends that the issue here is one of preservation, and not exhaustion.  To the extent that he failed to preserve the argument he now relies upon, he argues on several grounds that his nonpreservation should not defeat review of the argument by the trial court.  The DOC argues that exhaustion bars petitioner from raising an issue for the first time before the trial court, and that this requirement is jurisdictional.

4

¶ 10.    We review a dismissal for lack of subject matter jurisdiction de novo, "with all uncontroverted factual allegations of the complaint accepted as true and construed in the light most favorable to the nonmoving party." Jordan v. Agency of Transp., 166 Vt. 509, 511, 702 A.2d 58, 60 (1997).

¶ 11.    We agree with petitioner that the issue in this case is better understood as one of preservation rather than exhaustion.  We conclude, however, that although it had subject matter jurisdiction to hear petitioner's appeal, the trial court did not have the authority to hear the unpreserved issue that was raised for the first time before the court.  We are not persuaded to depart from the general requirement of preservation on any of the grounds proffered by petitioner.

¶ 12.    "Exhaustion" and "preservation" are related but distinct concepts.  The exhaustion requirement bars a party from filing a case in the trial court before complying with all available administrative procedures.  In contrast, the preservation requirement prohibits a party from raising issues for the first time before the trial court, without having raised them before the agency.  Parties must generally satisfy both requirements.  A party may have properly exhausted all administrative remedies before filing in court, but is generally limited on appeal to arguments preserved before the administrative agency.  See Frito-Lay v. Utah Labor Comm'n, 2009 UT 71, ¶ 32, 222 P.3d 55 ("[A] litigant may have exhausted her administrative remedies and properly brought an appeal to a state court but still be limited by the preservation doctrine regarding which issues she could raise before the state court.").

¶ 13.    This Court has generally recognized exhaustion and preservation as distinct doctrines.  Compare Luck Bros., Inc. v. Agency of Transp., 2014 VT 59, ¶ 19, 196 Vt. 584, 99 A.3d 997 (finding failure to exhaust when party filed in trial court without first following agency's procedure for appealing administrative decisions), Jordan, 166 Vt. at 512, 702 A.2d at 60 (finding exhaustion when parties "fully complied with [the agency's] procedures"), and Morean-Usher v. Town of Whittingham, 158 Vt. 378, 381, 610 A.2d 1108, 1110 (1992) (finding failure to exhaust

5

when party could have sought stay from agency panel but filed for stay in trial court instead), with Vt. Transco LLC v. Town of Vernon, 2014 VT 93A, ¶ 17, 197 Vt. 585, 109 A.2d 423 (finding failure to preserve issue when party did not raise it in administrative hearing), In re Entergy Nuclear Vt. Yankee, LLC, 2007 VT 103, ¶ 8, 182 Vt. 340, 439 A.2d 504 (finding failure to preserve request for evidentiary hearing when party did not demand hearing before administrative board), and Passion v. Dep't of Soc. and Rehab. Servs., 166 Vt. 596, 599, 689 A.2d 459, 463 (1997) (finding failure to preserve issue when "petitioner failed to raise the issue in the administrative proceedings below"). See also In re Brett, 2014 VT 20, ¶ 28, 196 Vt. 1, 93 A.3d 120 (finding "no failure to preserve any issues or to exhaust administrative remedies" when party raised all issues before the agency and followed all administrative procedures); Luck Bros., 2014 VT 59, ¶¶ 19, 34 (finding failure to exhaust because party skipped administrative procedures and then finding failure to preserve argument that administrative procedure was inadequate because party did not raise argument before agency).

¶ 14.     But we have also recognized the close relationship between the two requirements. In In re Denio, 158 Vt. 230, 608 A.2d 1166 (1992), we invoked the doctrine of exhaustion to help interpret a preservation statute that prohibited this Court from hearing any issues not argued before the Environmental Board during Act 250 proceedings. The appellant argued for the first time on appeal that the Environmental Board did not have jurisdiction to grant an Act 250 permit in that case. We held that the appellant failed to preserve the jurisdictional argument and stated that "[r]equiring preservation of jurisdictional issues in an administrative forum, usually under the rubric of exhaustion of administrative remedies, is common in American law." Id. at 234, 608 A.2d at 1169 (emphasis added). This makes sense. The purpose of the exhaustion requirement is "to afford the parties and the courts the benefit of the administrative agency's experience and expertise, and to afford the agency the opportunity to cure its own errors." Jordan, 166 Vt. at 516, 702 A.2d at 62-63. Likewise, "[t]he purpose of the [preservation] rule is to ensure that the original

6

forum is given an opportunity to rule on an issue prior to our review."[2] In re Entergy Nuclear Vt. Yankee, LLC, 2007 VT 103, ¶ 9 (quotation omitted).

¶ 15. In this case, petitioner exhausted his administrative remedies. "[W]hen administrative remedies are established by statute or regulation, a party must pursue, or 'exhaust,' all such remedies before turning to the courts for relief." Jordan, 166 Vt. at 511, 702 A.2d at 60. A trial court lacks subject matter jurisdiction to hear a case if a party fails to exhaust administrative remedies. Id. After petitioner received the final decision regarding his disciplinary conviction, he appealed the decision to the DOC Superintendent, pursuant to DOC policy. There were no additional administrative steps petitioner had to take after the Superintendent ruled on petitioner's appeal before filing the case in the trial court. Accordingly, he "fully complied with [the agency's] procedures" and exhausted his administrative remedies before seeking judicial review. Jordan, 166 Vt. at 512, 702 A.2d at 60.

¶ 16. However, to properly preserve an issue, a party must present the issue to the administrative agency "with specificity and clarity in a manner which gives the [agency] a fair opportunity to rule on it." Vt. Transco LLC, 2014 VT 93A, ¶ 16 (quotation omitted). Preservation does not implicate a court's subject matter jurisdiction over an entire case. Instead, it affects a court's authority to hear and decide an issue; we have consistently held that we will not address issues that were not properly preserved before the relevant administrative agency. In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001).

¶ 17. In this case, petitioner failed to preserve the argument he relies on in court. When petitioner appealed his disciplinary conviction to the Superintendent, he argued only that the DOC

---

[2] For this reason, the U.S. Supreme Court more explicitly blends preservation and exhaustion, referring to preservation of administrative arguments as "issue exhaustion." See Sims v. Apfel, 530 U.S. 103, 108-09 (2000) ("The basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts").

hearing had been untimely; petitioner raised the argument that the evidence was insufficient to support his disciplinary conviction on the charge in question for the first time in the trial court. His total failure to raise the issue before the agency meant that the DOC did not have an opportunity to rule on it.

¶ 18.   We reject petitioner's argument that the trial court could have reviewed his argument on the merits for plain error. In criminal cases, we review nonpreserved issues for plain error pursuant to Vermont Rule of Criminal Procedure 52(b). This civil claim for review of governmental action pursuant to V.R.C.P. 75 is not a criminal case and is not governed by V.R.Cr.P. 52(b). Instead, we follow the standard articulated in Vermont Transco LLC, 2014 VT 93A, ¶ 16, relating to preservation of issues in the administrative process.

¶ 19.   We do not accept petitioner's suggestion that courts should not require preservation in this context because inmates in petitioner's situation are denied legal assistance in preparing their cases. While it is true that the applicable DOC rules do not authorize a lawyer to act as a hearing assistant for an inmate in the initial hearing process, Facility Rules and Inmate Discipline 10, the rules specifically authorize any inmate who needs help appealing a disciplinary conviction to the Superintendent to contact the Prisoners' Rights Office. Id. at 14. Preservation in the appeal before the Superintendent is what is critical to subsequent judicial review, and petitioner had the opportunity to involve legal counsel in that appeal. The place to litigate the significant issues raised by petitioner's Rule 75 petition is, in the first instance, the DOC, and inmates are entitled to contact counsel in connection with their intra-agency appeal.

¶ 20.   Finally, we reject petitioner's suggestion that the State lost its opportunity to object to his failure to preserve his argument below by participating before the trial court in summary judgment briefing and argument on petitioner's central argument. Contrary to petitioner's claim, the summary judgment proceedings were no substitute for preservation before the DOC. The court did not have the benefit of the DOC's interpretation of the arguably incongruous disciplinary rules

at issue in this case. The court had no evidentiary record developed with a focus on the issue petitioner raises on appeal. And the DOC did not have the opportunity to correct any error in its disciplinary rules or their application in this case.

¶ 21. For the above reasons, we conclude that petitioner failed to preserve this issue, and the trial court properly concluded that it did not have the authority to address the issue. Because the amended petition filed by counsel raised only the nonpreserved issue, the trial court properly dismissed the entire case.

Affirmed.

FOR THE COURT:

_____
Associate Justice

9