*Carter v. Menard*, 341-6-17 Wncv (Teachout, J., Apr. 8, 2019)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 341-6-17 Wncv** |

**BERNARD CARTER**
    **Plaintiff**

    **v.**

**LISA MENARD, Commissioner, Vermont**
**Department of Corrections, and CULLEN BULLARD,**
**Director of Classification**
    **Defendants**

### DECISION
### Cross-Motions for Summary Judgment

Bernard Carter is an inmate in the custody of the Commissioner of the Department of Corrections. He seeks Rule 75 review of the Commissioner's denial of a grievance by which he sought the removal from his prison record of any evidence of a particular DOC determination committing him to administrative segregation (ADSEG). He represents that he got ADSEG solely because of a disciplinary conviction (DR), the DR was later expunged, and therefore the ADSEG necessarily should have been expunged as well. The court denied a first round of cross-motions for summary judgment to allow the parties more time for discovery. Following this second round of cross-motions for summary judgment, the court notified the parties of its recent decision in *Pratt v. Menard*, No. 419-7-16 Wncv (December 21, 2019) and allowed further briefing. Both parties submitted additional briefing and the court now rules as follows.[1]

Mr. Carter asserts that he was convicted of a DR in March 2016 and given ADSEG, as a consequence of the DR, also in March 2016. He represents that in January or February 2017, the DR was expunged. The DR evidently was affirmed on administrative review but expunged by agreement in the course of subsequent litigation. There is no dispute that the DR in fact was expunged from his disciplinary record and the DR "packet," to the extent it had been included in the corresponding ADSEG file, was removed from it. The record of his ADSEG has not itself been expunged.

Mr. Carter has variously claimed that his ADSEG record should be expunged due to a court order or according to the terms of a settlement agreement from another case. The State argues that Mr. Carter did not preserve these issues in the grievance he exhausted. *See generally Pratt v. Pallito*, 2017 VT 22, 204 Vt. 313 (distinguishing preservation from exhaustion and analyzing preservation in prisoner grievance case in depth). The purpose of the preservation requirement is to ensure that the agency has a fair chance to address an issue before it is presented to the judicial branch for further review. *Id*., 2017 VT 22, ¶ 16. "[T]o properly

---

[1] *Pratt* addressed issues related to the scope of expungement of DR records in particular circumstances that do not apply in this case. Mr. Carter seeks expungement of his ADSEG records, not his DR records.

preserve an issue, a party must present the issue to the administrative agency 'with specificity and clarity in a manner which gives the [agency] a fair opportunity to rule on it.'" *Id*. (citation omitted). These issues were not presented to the DOC in Mr. Carter's grievance and the State is entitled to summary judgment to that effect.

Moreover, there is no record of any court order requiring expungement of the ADSEG and Mr. Carter has formally admitted that his settlement agreement, regardless whether it was written, requiring expungement of the DR *did not* require expungement of the ADSEG. See Defendant's Interrogatories, Requests to Produce, and Requests to Admit ¶ 14 at 4, and Mr. Carter's Responses ¶ 14 at 5 (filed Aug. 13, 2018). His argument is that it *should* be expunged.

Accordingly, the only issue before the court is the one Mr. Carter has principally presented in this case: whether the expungement of a DR necessarily means that an ADSEG prompted by the same underlying events also must be expunged. In his administrative grievance, Mr. Carter asserted that he had been convicted of a major disciplinary violation, the violation was later expunged, and therefore his ADSEG also should have been expunged. The ADSEG, in his view, was a mere "collateral consequence" of the DR. The administrative response to his grievance was that ADSEG is a *separate* administrative process from the disciplinary process and expungement of a DR does not necessarily suggest that any ADSEG should be expunged.[2]

Inmate discipline is administered according to DOC Directive 410.01 (facility rules and inmate discipline). Directive 410.01 is intended "to enforce rules and regulations and offer options for the inmate to repair the harm caused by misconduct." *Id*., Purpose. An accused inmate is entitled to a hearing, the hearing officer makes findings, and sanctions—which may include *disciplinary* segregation—are imposed. *Id*., Procedural Guidelines §§ 6–7. The inmate may appeal *to the superintendent*. *Id*. § 9.

Administrative segregation arises from a different process. It may be imposed under DOC Directive 410.03 (placement on administrative segregation). Administrative segregation is used "1) to provide secure and safe housing, through a due process procedure, to inmates who require a higher degree of control and supervision, and removal from general population because of being charged with a serious rule violation; 2) to preserve the order and security of a correctional facility; and 3) to manage inmate behavior." *Id*., Policy. An inmate may be placed in administrative segregation for a variety of reasons—it is not contingent on a DR conviction. *Id*., Procedural Guidelines § 1. A hearing is held, either together with a disciplinary hearing, if there is one, or separately. See *id*., §§ 1(a), 3. A hearing officer makes findings and the inmate may appeal *to the commissioner*. *Id*. §§ 4, 5. Administrative segregation status then is reviewed on a regular basis administratively. *Id*. § 6.

Mr. Carter's ADSEG paperwork shows that the initial reason the DOC was prompted to seek ADSEG was his conviction for the DR that, a year later, was expunged. However, the ADSEG paperwork also shows that he was given ADSEG not *merely* because of that DR conviction, but due to "staff statements" and his "prior disciplinary history." See DOC ADSEG

---

[2] The State argues in this case that, while expungement is an available administrative remedy for a DR in certain circumstances, it is not an available administrative remedy for ADSEG in any circumstances. Due to the outcome of the pending motions, it is unnecessary to address this argument in this case.

2

Placement Report 1 (filed Aug. 13, 2018). Based on the evidence presented, the ADSEG hearing officer made his own findings of fact related to the relevant underlying conduct and did not defer to the DR hearing officer's findings of fact. See DOC Hearing Report Form 1–2 (filed Aug. 13, 2018).

It is clear then that disciplinary and administrative segregation processes are separate even where the reasons may be overlapping. Expungement of a DR related to those overlapping circumstances does not, by itself, automatically mean that the ADSEG lacks a reasonable basis or should be expunged. In this case, the separate ADSEG process, and not the DR, was the basis for segregation. Thus, expungement of his DR did not require that his ADSEG should have been expunged.

ORDER

For the foregoing reasons, the State's motion for summary judgment is *granted*. Mr. Carter's motion for summary judgment is *denied*.

Dated at Montpelier, Vermont this _____ day of April 2019.

_____
Mary Miles Teachout
Superior Judge