Vermont Superior Court
Filed 12/12/23
Washington Unit

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 22-CV-00587



Kyle Zanks v Nicholas Deml

## Opinion and Order on the State's Motion for Summary Judgment

Defendant the Vermont Department of Corrections (DOC) designated Plaintiff Kyle Zanks, an inmate in the DOC's custody, a "high-risk sex offender."  He challenged that designation administratively without success and has taken a statutory appeal *de novo* to this Court.  *See* 13 V.S.A. § 5411b(b) (indicating that the review available is "appeal de novo" and subject to Vt. R. Civ. P. 75 procedure).  The State has filed a motion for summary judgment asking the Court to affirm Mr. Zanks' high-risk designation.  The Court makes the following determinations.

I.      Standard of Review

In a prior order following the parties' summary judgment briefing, the Court indicated its intent to conduct its review in this case under the principles described in *Lockwood v. Baker*, No. 21-CV-1206, 2022 WL 16758031 (Vt. Super. Ct., Oct. 28, 2022) and *Sylvester v. Touchette*, No. 312-6-19 Wncv, 2020 WL 13260810 (Vt. Super. Ct., May 28, 2020).  The Court summarized as follows:

> To summarize the purport of *Lockwood*: the statutory expression *appeal de novo* in § 5411b(b) contemplates a form of *record review* for which deference to the agency is, to some extent, appropriate.  It does not contemplate a *de novo* hearing or trial.  While the underlying administrative process includes an opportunity for the offender to present argument and evidence to the sex offender review committee (Committee), that opportunity is not an adversarial, quasi-judicial hearing.  It is an opportunity for the offender to influence the Committee's exercise of

discretion based on the record before it.  Similarly, the Court's review does not contemplate a *de novo* evidentiary proceeding.

In this case, the record before the Committee, including the transcript of the administrative hearing, is in the record of this case.  Under *Lockwood/Sylvester*, this Court's role is to review the administrative record and determine whether it agrees with the agency's decision, giving the agency appropriate deference.  Mr. Zanks' role is to show that the agency got it wrong, and the Court therefore should "disagree" with it.  *See* 3 Charles H. Koch, Jr. and Richard Murphy, Admin. L. & Prac. § 9:22 (3d ed.) ("The challenger, like any other plaintiff, must show by a preponderance in the judicial record that the agency decision is wrong.").

Because the parties' summary judgment briefing did not clearly reflect the nature of the Court's review, the Court invited further briefing as to that matter before ruling on the State's motion.  The State responded by clarifying its view that *Lockwood* and *Sylvester* correctly describe the Court's review in this case.

Mr. Zanks responded by arguing that 13 V.S.A. § 5411b(b) requires a *de novo* hearing or trial, a completely new evidentiary proceeding, as though the administrative proceeding never happened, while conceding that the DOC remains entitled to appropriate deference.[1]  In so arguing, Mr. Zanks does not discuss the analysis of *Lockwood* and *Sylvester* or the pivotal distinction made in *State v. Madison*, 163 Vt. 360, 368–70 (1995), which is central to both decisions, between *de novo* review (or, as here, appeal *de novo*), a form of record review, and a *de novo* hearing or trial, a brand new evidentiary proceeding.  Instead, Mr. Zanks urges the latter, relying on these five cases:

---

[1] While both sides acknowledge some level of deference, in this case, the Court's determinations would be the same without affording such deference.

*Town of Killington v. Dep't of Taxes*, 2003 VT 88, 176 Vt. 70; *Shaffer v. Town of Waitsfield*, 2008 VT 44, 183 Vt. 428; *Mollica v. Div. of Prop. Valuation & Rev.*, 2008 VT 60, 184 Vt. 83; *In re ANR Permits in Lowell Mountain Wind Project*, 2014 VT 50, 196 Vt. 467; *Plum Creek Maine Timberlands, LLC v. Vermont Dep't of Forests, Parks & Recreation*, 2016 VT 103, ¶ 6, 203 Vt. 197. All the cited cases arise in the *de novo* hearing context, and all address issues as to the appropriateness of agency deference in different circumstances. None, however, addresses the distinction between a *de novo* hearing and *de novo* record review in any manner that is useful here, and none sheds light on the relevant conclusions in *Lockwood* and *Sylvester*. The Court does not find Mr. Zanks' citations helpful and is not persuaded to depart from *Lockwood* and *Sylvester* in this case.

The administrative record is before the Court for review. There is no need to take evidence.

II.     The Decision on Appeal

The Sex Offender Review Committee determined as follows:

> During the hearing, you were given the opportunity to be heard and to present any relevant evidence to the Committee.
>
> You presented a written statement to the committee which stated, in summary, as a youthful offender, you did not think about the effects of your actions and behaviors to others as well as not taking programming and probation conditions seriously. You also stated, in summary, you are looking forward to self-improvement and finding ways of interacting with others in a safe manner.
>
> Your attorney, Patricia Lancaster asked Victoria Marini-Bowley, Ph.D. to attend the hearing to discuss the results of a psychosexual evaluation and review that was conducted by Vermont Forensic Associates, Dr. John Holt and herself. When asked of her evaluation of Mr. Zanks' risk, Dr. Victoria Marini-Bowley stated her opinion is that you have pattern of opportunistic sexual offending rather than predatory. She further stated

you have a pattern of offending that will continue without interventions such as high–intensity treatment.

The Committee designated you high risk based on your pattern of predatory sexual offending. "Predatory" means an act directed at stranger, or person with whom relationship has been established or promoted for the primary purpose of victimization. "Pattern" means having two or more sexual offense victims and typically, one or more prior sex offense convictions. The Committee did not find your presentation compelling enough to alter our decision.

The Committee considered the evidence you presented, and based upon the facts outlined above, the Committee has [determined to maintain the designation].

III.    Analysis

Mr. Zanks argues that the Committee arrived at the wrong result because there is no pattern of *predatory* sexual offending in the record, his expert so testified at the hearing before the Committee, and there is no basis for deferring to the Committee's apparent interpretation of "predatory" because that term is unambiguous, leaving no room for administrative discretion. Mr. Zanks asserts that none of the sexual offenses described in the record were predatory because none involved strangers or anyone he cultivated for the purpose of victimization.

Mr. Zanks' heavy emphasis on the term *predatory* requires some context. The DOC's statutory mandate under 13 V.S.A. § 5411b(a) is to determine which sex offenders are "high risk," an expression that is defined by statute. "'Risk' means the degree of dangerousness that a sex offender poses to others. 'High-risk' means a high degree of dangerousness that a sex offender poses to others. Dangerousness includes the probability of a sexual reoffense." 13 V.S.A. § 5401(16). "Predatory" and "sexually violent predator" are defined terms, but for other statutory purposes. 13 V.S.A. §

5401(7), (12).  The high-risk inquiry focuses on danger to others, and whether one is a "predator" is not a necessary component of the inquiry.

It should be no surprise, then, that the DOC's rule controlling high-risk designations does not even mention the word predator.  *See* Designation of a High-Risk Sex Offender, Vt. Admin. Code 12-8-4:4 (High-Risk Rule).  Rather, the rule properly focuses the Committee's attention on the statutory inquiry into the danger posed to others.  "The Committee must determine by a preponderance of the evidence that the offender poses a high degree of dangerousness to others.  'Dangerousness' includes the probability that the offender will commit a new sexual offense."  High-Risk Rule 4.4.1.  Thus, nothing in the relevant statute and rule incorporates the predator concept into a high-risk designation.  The focus is simply on the danger posed to others.

However, a "pattern of predatory sexual offending" is listed in the DOC's policies as one possible reason initially to refer an inmate to the Committee for a potential high-risk designation even if certain other factors might not suggest it.  Sex Offender Registry Requirements Manual at 27.  The Manual, though, is an internal operating policy.  It is not a binding rule adopted under the Administrative Procedures Act, 3 V.S.A. §§ 800–848.  It does not purport to control the determinations made by the Committee or the Court on appeal.

The Court acknowledges that the Committee in this case designated Mr. Zanks high-risk based on its determination that he has a pattern of predatory sexual offending.  Mr. Zanks thus has endeavored to show that his offenses are not predatory because they were not directed at strangers or at persons with whom he established a relationship for the primary purpose of victimization.

The Court has two responses to this argument. If the Committee erred at all in focusing on the predatory nature of Mr. Zanks' offenses rather than the fundamental inquiry into whether he presents a high risk of danger to others, review here is *de novo*, and the Court is not bound by the details of the Committee's decision. In that regard, the Court notes that the record is replete with examples of opportunistic sexual offenses reflecting no consideration on Mr. Zanks' part as to the gravity of his conduct and its impact on others (or, indeed, on himself). Those examples clearly appear in the record, are discussed expressly in briefing, and need not be recounted here. See, e.g., State's October 18, 2023 Reply Memorandum, ¶¶ 1-19. Nor does anything in the record indicate that, at least at this point, Mr. Zanks has undertaken any sort of programming or rehabilitation that one day might hold some promise of better conduct in the future.

Mr. Zanks' own clinical psychology expert testified at his hearing as follows:

> So this, you know, [risk assessment tool] does put him in that above average risk, puts him in the above average risk category, and he certainly has quite a bit of treatment need. And when we had, we identified, you know, numerous areas of need for him and had recommended the high intensity of treatment for him that, you know, this pattern of what we saw was a pattern of opportunistic offending, and that would, you know, be I think quite likely to continue without intervention. It has continued to some degree in, you know, the facility in that there was a [Prison Rape Elimination Act, 34 U.S.C. §§ 30301–30309] investigation. And so, you know, he's certainly in need of treatment and a high intensity of that.

Based on the entirety of the administrative record, the Court independently concludes that Mr. Zanks poses a high degree of dangerousness to others, and the Committee, thus, properly designated him high-risk.

Separately, to the extent that Mr. Zanks has focused on the definition of predator rather than the danger posed to others, the Court notes that the Committee did not make detailed findings as to whether individual victims either were strangers or constituted

relationships that were cultivated for victimization purposes. The record does not suggest the latter. The Court assumes that the Committee believed that the victims were strangers. The Committee's findings do not explain why it felt the victims were strangers or precisely what it thought the word *stranger* means in this context. Mr. Zanks, in arguing that the victims obviously were not strangers, has not offered a definition; nor do the relevant statutes, rule, or manual. Stranger could suggest, as Mr. Zanks seems to assume, an encounter between people who had never before seen each other. The Court is not persuaded, however, that it must mean that in this context. It might, for example, also include a mere acquaintance or one with whom the offender does not have a current, developed relationship, which appears to describe most or all of Mr. Zanks' victims. In any event, the Court need not resolve this issue because it is unnecessary to the Court's *de novo* review.[2]

The Court has reviewed the record *de novo*. The Court concludes Mr. Zanks was properly designated high-risk because he presents a high degree of danger to others. He has engaged in a clear pattern of opportunistic and serious sexual offenses that his own clinical psychology expert has concluded is "quite likely" to continue absent substantial rehabilitative interventions that have not yet occurred, and there is nothing in the record to indicate that he appreciates the harm his behavior has caused and that it will not recur in the future. High-Risk Rule 4.4.1.

---

[2] A similar result follows as to whether Mr. Zanks fostered any of the relationships for purposes of victimization. The Court need not reach the question.

## Conclusion

For the foregoing reasons, the State's motion for summary judgment is granted.

Electronically signed on Monday, December 11, 2023, per V.R.E.F. 9(d).


_____
Timothy B. Tomasi
Superior Court Judge